## In re TURNER BROTHERS TRUCKING COMPANY, INC.

### No. 06–99–00120–CV.

Court of Appeals of Texas, Texarkana.

Submitted Nov. 22, 1999.

Decided Nov. 23, 1999.

John R. Mercy, Atchley, Russell. Waldrop, Texarkana, for Relator.

Lauren L. Parish, Gilmer, for Respondent.

Ralph F. Pelaia, Jr., Tefteller & Pelaia, Gilmer, Lynn S. Patton, Patton, Nix & Young, Longview, for Real Parties in Interest.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

# OPINION

Opinion by Justice ROSS.

This is a petition for writ of mandamus, arising out of the trial court's denial of Turner Brothers Trucking Company, Inc.'s (Turner Brothers) motion to compel arbitration of a personal injury lawsuit filed by Tommy and Marilyn McCaskill. We deny the writ.

On or about September 23, 1996, Tommy was employed by Turner Brothers and was operating a sixty-five-ton hydraulic crane owned by Turner Brothers. The crane fell, causing serious personal injuries to Tommy. Before July 1996, the date of Tommy's employment, Turner Brothers entered into a contract with Employment Disputes Resolution, Inc. (EDR), in connection with an ERISA-qualified employee welfare benefit plan. The contract purports to govern the adjudication of all personal injury or related tort claims between Turner Brothers and its employees who agreed to be bound by that contract.

Turner Brothers claims that Tommy executed a document [1] which provided for any dispute between the employee and Turner Brothers to be resolved in an EDR forum and under EDR rules and procedures, to the exclusion of legal action in state or federal court. Turner Brothers' petition alleges that Tommy could have chosen not to sign the agreement; Tommy claims he had no real choice but to sign.

After the accident, the McCaskills filed suit against Turner Brothers in the Upshur County District Court. However, on

---

1. The document signed was actually an agreement between Tommy and EDR, in which Tommy waived the right to proceed in court in return for EDR providing the procedures for handling disputes with Turner Brothers. Turner Brothers was actually a third party beneficiary of this agreement.

being advised of the arbitration agreement, the McCaskills nonsuited this action in December 1996. The arbitration process was then begun and preliminary discovery, in accordance with the arbitration process, commenced. Turner Brothers alleges that at some point in 1998, however, the McCaskills filed suit against Patterson Onshore Drilling Company, alleging that it was responsible for the injuries suffered by Tommy in September 1996. Patterson filed a third party action against Turner Brothers, but before Turner Brothers was served, the McCaskills filed a second amended petition naming Turner Brothers as a defendant. Turner Brothers moved to compel arbitration; a hearing on that motion was held on April 29, 1999, and the motion was denied on May 18, 1999.

Recognizing that mandamus is an extraordinary remedy, Turner Brothers claims entitlement to mandamus under the Federal Arbitration Act.[2] It contends that federal public policy favors arbitration and that federal policy preempts state law in this situation. Turner Brothers claims that the agreement signed by Tommy is legally binding and compels him to submit any claim arising out of the September 23, 1996, accident to an EDR forum, i.e., arbitration. The McCaskills contend that the agreement is not governed by the mandates of the Federal Arbitration Act and that the alleged agreement is not legally binding.

■■■■ Mandamus issues only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy at law. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992). In a mandamus proceeding, the court must determine whether: (1) the relator has an adequate remedy by appeal; and (2) the trial court abused its discretion in entering the order of which the relator complains. *Houston Chronicle Publ'g Co. v. Crapitto*, 907 S.W.2d 99, 102 (Tex.App.-Houston [14th Dist.] 1995, orig. proceeding). A party seeking to compel arbitration must

establish the existence of an arbitration agreement and show that the claims raised fall within the scope of that agreement. Once the party establishes a claim within the scope of the agreement, the trial court must compel arbitration and stay its own proceedings. A party erroneously denied the right to arbitrate under the Federal Arbitration Act has no adequate remedy on appeal, and relief by mandamus is appropriate. *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573–75 (Tex.1999).

■■■■ The first issue raised is whether Tommy entered into a legally binding agreement requiring him to pursue his personal injury claim through EDR. He argues first that the purported agreement is void for lack of consideration. A contract must be based on valid consideration, i.e., mutuality of obligation. Consideration consists of benefits and detriments to the contracting parties. The detriments must induce the parties to make the promises, and the promises must induce the parties to incur the detriments. A contract that lacks consideration lacks mutuality of obligation and is unenforceable. *Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 408–09 (Tex.1997).

In this case, consideration is recited in the agreement, and the record shows that, as other consideration, Tommy was eligible to receive and did receive increased benefits due to his participation in the EDR plan. This is sufficient to support the legal consideration requirement.

The McCaskills' other challenges to the enforcement of the arbitration agreement depend on the applicable statute under which its enforcement is sought. Turner Brothers seeks enforcement under Section 2 of the Federal Arbitration Act:

> A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to

---

2. 9 U.S.C.A. § 1, et seq. (West 1999).

perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity. . . .

9 U.S.C.A. § 2.

The McCaskills argue that the federal Act is inapplicable to the agreement in question and further contend that this agreement is controlled by the Texas arbitration statute which, at the time of the execution of the contracts and the injury involved in this case, read as follows:

A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract. A court shall refuse to enforce an agreement or contract provision to submit a controversy to arbitration if the court finds it was unconscionable at the time the agreement or contract was made. Provided, however, that none of the provisions of this chapter shall apply to:

. . . .

(c) any claim for personal injury except upon the advice of counsel to both parties as evidenced by a written agreement signed by counsel to both parties. A claim for workers' compensation shall not be submitted to arbitration under this chapter.

TEX. CIV. PRAC. & REM.CODE ANN. § 171.001 (Vernon 1997), *amended by* Act of May 8,

1997, 75th Leg., R.S., ch. 165, § 5.01, 1997 Tex. Gen. Laws 329.[3]

Section 2 of the Federal Arbitration Act states that a written provision in a contract "evidencing a transaction involving commerce" to settle a dispute arising thereunder by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2. The Supreme Court has ruled that in enacting Section 2, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims that the contracting parties agreed to settle in arbitration. Congress' authority in this regard rests on the Commerce Clause[4] and the Supremacy Clause[5] of the United States Constitution and takes precedence over state attempts, legislative or judicial, to undercut the enforceability of arbitration agreements. State law to the contrary was preempted. *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). In a 1995 decision, the Supreme Court defined the limits of "involving commerce," as used in Section 2, holding that "involving commerce" was the functional equivalent of "affecting commerce," and: "That phrase-'affecting commerce'-normally signals Congress' intent to exercise its Commerce Clause powers to the full." *Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 273, 115 S.Ct. 834, 839, 130 L.Ed.2d 753, 764 (1995).

Later in 1995, the Supreme Court again addressed the issue of the limits of Con-

---

**3.** The current statute reads as follows:

(a) A written agreement to arbitrate is valid and enforceable if the agreement is to arbitrate a controversy that:
    (1) exists at the time of the agreement; or
    (2) arises between the parties after the date of the agreement.
(b) A party may revoke the agreement only on a ground that exists at law or in equity for the revocation of a contract.

TEX. CIV. PRAC. & REM.CODE ANN. § 171.001 (Vernon Supp.1999).

**4.** U.S. CONST. art. I, § 8, cl. 3.

**5.** U.S. CONST. art. VI, cl. 2; *see Lake Shore & Michigan S. Ry. Co. v. State of Ohio,* 173 U.S. 285, 297–98, 19 S.Ct. 465, 470, 43 L.Ed. 702, 707 (1899) ("When Congress acts with reference to a matter confided to it by the Constitution, then its statutes displace all conflicting local regulations touching that matter, . . .")

gress' authority under the Commerce Clause. In *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), the Court considered a constitutional challenge to the Gun–Free School Zone Act of 1990, which prohibited the possession of a firearm in a designated school zone. That Act was held to exceed Congress' authority to regulate under the Commerce Clause. In the course of the opinion, Chief Justice Rehnquist expounded on Congress' Commerce Clause power, finding three broad areas of activity subject to regulation: 1) regulation of the use of the channels of interstate commerce; 2) regulation and protection of the instrumentalities of commerce, or persons or things in interstate commerce; and 3) regulation of those activities "having a substantial relation to interstate commerce." 514 U.S. at 558, 115 S.Ct. 1624. The opinion, after considering which of two standards-"affecting commerce" or "substantially affecting commerce"-properly expresses the limitation on Congress' authority, determined that "the proper test requires an analysis of whether the regulated activity 'substantially affects' interstate commerce." *Id.*

The determination of whether the arbitration agreement in this case is subject to the federal Act or to state law is crucial for two reasons. First, the version of the Texas arbitration statute in effect at the time the agreements the subject of this suit were signed prohibited enforcement of arbitration agreements pertaining to any personal injury claim "except upon the advice of counsel to both parties as evidenced by a written agreement signed by counsel to both parties." TEX. CIV. PRAC. & REM. CODE ANN. § 171.001(c) (Vernon 1997). If state law is to be applied in this case, this provision would clearly prohibit enforcement of the arbitration agreement.

Second, Texas appellate courts have held that, when a trial court denies a motion to compel arbitration under an agreement subject to Section 2 of the Federal Arbitration Act, the movant is required to seek relief by a petition for writ of mandamus; if the arbitration agreement is under Texas law, the movant is required to pursue an interlocutory appeal. *Russ Berrie and Co. v. Gantt*, 998 S.W.2d 713, 714–15 (Tex.App.-El Paso 1999, no pet. h.); *D. Wilson Constr. Co. v. Cris Equip. Co.*, 988 S.W.2d 388, 392 (Tex.App.-Corpus Christi 1999, no pet.); *L & L Kempwood Assocs. v. Omega Builders, Inc.*, 972 S.W.2d 819, 821 (Tex.App.-Corpus Christi 1998, no pet.); *see, e.g., EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 91 (Tex.1996). In this case, Turner Brothers has sought relief by mandamus. If federal law applies, Turner Brothers is entitled to the relief requested (unless the agreement is unconscionable); if Texas law applies, Turner Brothers is required to pursue an interlocutory appeal and mandamus is not available.

The Texas courts of appeals have split on the issue of whether "affect" or "substantially affect" interstate commerce determines whether an arbitration agreement is subject to the federal or state statute. In *Palm Harbor Homes, Inc. v. McCoy*, 944 S.W.2d 716 (Tex.App.-Fort Worth 1997, orig. proceeding), the Fort Worth court held that the "affect commerce" language of *Allied–Bruce Terminix* was not changed by the subsequent *Lopez* decision:

> The extent of Congress' power to legislate is not at issue here; unlike in *Lopez*, the Goldens have not challenged the constitutionality of the FAA. Thus, the only issue we must address is the [sic] how broad Congress intended the term "involving commerce" to be. We follow the Supreme Court in holding that a transaction involves commerce under the FAA if it "in fact" affects interstate commerce. *Allied–Bruce*, 513 U.S. at 268–70, 276–78, 115 S.Ct. at 837, 841, 130 L.Ed.2d at 761, 766.

*Id.* at 720.

On the other hand, the Corpus Christi court of appeals has determined that the language of *Lopez* specifically holds that Congress may regulate, under the Com-

merce Clause, only activities "substantially affecting" interstate commerce. *L & L Kempwood Assocs.*, 972 S.W.2d at 821–22; *see also Ikon Office Solutions, Inc. v. Eifert*, 2 S.W.3d 688 (Tex.App.-Houston [14th Dist.] 1999, orig. proceeding); *Russ Berrie and Co.*, 998 S.W.2d at 715. The *L & L Kempwood* case met the issue head on, acknowledging *Palm Harbor* and other authority to the contrary, stating:

> Therefore, whether "the extent of Congress's power to legislate" has been exceeded, which the *Palm Harbor* court thought was not at issue, *is actually an element that must be established in every case before the FAA applies.* *Allied–Bruce* held that, in establishing the FAA, Congress intended to extend the jurisdiction of the law to the maximum extent permitted under the Commerce Clause. *Allied–Bruce*, 115 S.Ct at 840. This aspect of *Allied–Bruce* remains intact after *Lopez*. The significant modification of the *Allied–Bruce* analysis that results from *Lopez* is that, after *Lopez*, the Commerce Clause permits Congress's jurisdictional [sic] to reach only as far as matters that "substantially affect" interstate commerce.

*L & L Kempwood Assocs.*, 972 S.W.2d at 822 (emphasis added).

Both the El Paso court in *Berrie* and the Corpus Christi court in *Kempwood* reviewed the record to determine whether the underlying transaction evidenced a substantial effect on interstate commerce. *Russ Berrie and Co.*, 998 S.W.2d at 715–16; *L & L Kempwood Assocs.*, 972 S.W.2d at 822. Both courts concluded that they did not and held the federal statute inapplicable.

■■■ We believe the reasoning of the *L & L Kempwood* decision is more in keeping with the Supreme Court's *Lopez* decision. Therefore, we conclude that it was Turner Brothers' burden to show that the contract in issue had a substantial effect on interstate commerce. To meet this burden, Turner Brothers relies on the following: Turner Brothers is organized in the State of Oklahoma, with offices in both Oklahoma and Texas; it is registered through the Department of Transportation to conduct business in the forty-eight contiguous states; EDR is a foreign entity and Tommy's job often involved moving oil rigs and other heavy machinery in an industry engaged in interstate commerce. We find these sufficient to satisfy the constitutional requirement for "substantially affecting" commerce, such as would make Section 2 of the Federal Arbitration Act applicable. The creation of an employment relationship which involves commerce is a sufficient transaction to fall within Section 2 of the Federal Arbitration Act. *BWI Cos. v. Beck*, 910 S.W.2d 620, 622 (Tex.App.-Austin 1995, orig. proceeding).

■■■ Having determined that federal law applies, however, does not dispose of the McCaskills' further contention that the arbitration agreement in this case is unconscionable. If it is, then it is unenforceable regardless of whether federal or state law applies. *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687–88, 116 S.Ct. 1652, 1656–57, 134 L.Ed.2d 902, 909 (1996).

■■■ Proof of unconscionability begins with two broad questions: 1) the procedural aspect, i.e., how did the parties arrive at the terms in controversy; and 2) the substantive aspect, i.e., are there legitimate commercial reasons justifying the terms of the contract. *Pony Express Courier Corp. v. Morris*, 921 S.W.2d 817, 821 (Tex.App.-San Antonio 1996, no pet.). In determining whether a contract is unconscionable, we must examine the entire atmosphere in which the agreement was made; the alternatives, if any, available to the parties at the time the contract was made; the "nonbargaining ability" of one party; whether the contract was illegal or against public policy; and whether the contract was oppressive or unreasonable. Under Texas law, the party asserting unconscionability of the contract bears the burden of proving both procedural and

substantive unconscionability. The question is one of law, to be decided by the court. *American Stone Diamond, Inc. v. Lloyds of London,* 934 F.Supp. 839, 844 (S.D.Tex.1996) (applying Texas law).

The McCaskills list nine reasons why the contract should be held unconscionable:

1. it was created without the benefit of preagreement bargaining;

2. between parties of unequal bargaining power;

3. signed by an individual who was functionally illiterate;

4. who was instructed by his superior to sign because it was necessary;

5. presented by a representative of Turner Brothers who did not understand the agreement;

6. presented in an environment where there was no opportunity to read and understand, even if Tommy was literate;

7. required Tommy to relinquish valuable legal rights;

8. imposed unilateral penalties against Tommy in the event EDR was required to defend or enforce the agreement;

9. required Tommy to submit to procedures and rules subject to unilateral amendment or modifications, and not supported by consideration.

■ Mere inequality of bargaining power is not a sufficient reason to hold an arbitration agreement unenforceable in the employment context. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 33, 111 S.Ct. 1647, 1655–56, 114 L.Ed.2d 26, 41 (1991). The fact that an employee relinquishes certain rights in a "take it or leave it" situation does not make such an arrangement unconscionable per se. *Dillee v. Sisters of Charity,* 912 S.W.2d 307, 309–10 (Tex.App.-Houston [14th Dist.] 1995, no writ). *Dillee,* however, dealt with employees who were educated, which is not the case here. Therefore, we have looked at the record to determine if the method by which the agreement was procured or the terms of the agreement were such as to warrant this Court's intervention. Tommy's affidavits and other evidence in the record indicate his lack of education and the circumstances under which the agreement was signed. The trial court as fact finder was presented with evidence showing the following:

(1) The employees who presented Tommy with the documents purporting to contain his agreement to arbitrate did not themselves understand the agreement;

(2) Tommy had no one to explain the document to him and did not understand it; and

(3) Testing by a licensed psychologist showed that Tommy was functionally illiterate and had a premorbid reading disorder.

This evidence fully supports the trial court's conclusion that Tommy did not knowingly consent to the contract to compel arbitration of his personal injury claim. There is no evidence to the contrary, and we hold that, based on the procedural aspect of this agreement, it is unconscionable. For this reason, the trial court did not abuse its discretion in denying the motion to compel arbitration.

The petition for writ of mandamus is denied.