Brian Paul PREVOT and
Brenda Prevot

v.

PHILLIPS PETROLEUM COMPANY.

No. Civ.A. G–00–295.

United States District Court,
S.D. Texas,
Galveston Division.

March 7, 2001.

Dennis M. McElwee, Schechter and
Marshall, Houston, TX, Matthew D. Shaf-
fer, Schechter McElwee et al., Houston,
TX, for Brian Paul Prevot, Brenda Prevot,

Sixto Ramirez, Barbara Ramirez, plaintiffs.

Deborah Lee Bradley, Stern and Miller, Houston, TX, for Isidro Perez, Jose Llanas, Sally Beth Flores, Angel Soto, Michelle Soto, Victor Valles, Maria Valles, intervenor-plaintiffs.

Edward J Patterson, III, Fulbright and Jaworski, Houston, TX, Otway B Denny, Jr, Fulbright & Jaworski, Houston, TX, for Phillips Petroleum Company, defendant.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT PHILLIPS PETROLEUM COMPANY'S MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE, MOTION TO STAY LITIGATION

KENT, District Judge.

Plaintiff's–Intervenors Jose Llanas and Sally Beth Flores, Angel Soto and Michelle Soto, and Victor Valles and Maria Valles bring claims for personal injuries allegedly incurred in connection with an explosion at the Phillips Petroleum facility. Now before the Court is Defendant Phillips Petroleum Company's ("Phillips") Motion to Compel Arbitration and Dismiss Claims or, In the Alternative, Motion to Stay Litigation. For the reasons stated below, Defendant's Motion is **GRANTED IN PART AND DENIED IN PART.**

### I. BACKGROUND

Plaintiff's–Intervenors Jose Llanas ("Llanas"), Angel Soto ("Soto"), and Victor Valles ("Valles") (collectively "Plaintiffs") bring this action for personal injuries allegedly incurred in connection with an explosion at the Phillips facility occurring on March 27, 2000. Their spouses bring actions for loss of consortium. LLanas, Soto, and Valles all signed Dispute Resolution Agreements ("arbitration agreements") with their employer, Brock Maintenance, Inc. ("BMI"). The arbitration agreements each provided in relevant part that:

each, every, and all claims, disputes and/or controversies, now existing or hereafter arising, whether now known or unknown, including the arbitrability of any claim, dispute or controversy, shall be exclusively resolved by the parties first trying to settle by mediation ... failing which, the settlement of the dispute shall be by final and binding arbitration.

Defendant Phillips was a third party beneficiary of the agreements in that the agreements cover disputes between the signatories and the "Employer, and/or Employer's customers and clients." It is undisputed that Phillips was a BMI customer or client at the time of the alleged injuries. Plaintiffs Soto and Valles claim they could not read English at the time that they signed the agreements and hence the agreements are unconscionable. Plaintiff Llanas does not make any such argument.

### II. ANALYSIS

#### A. Legal Standard

At the outset, the Court observes that there is a strong federal policy favoring the arbitration process. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991) (noting that the Federal Arbitration Act manifests a liberal federal policy favoring arbitration agreements); *Volt Info. Scis., Inc. v. Board of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476, 109 S.Ct. 1248, 1254, 103 L.Ed.2d 488 (1989); *Life of Am. Ins. Co. v. Aetna Life Ins. Co.*, 744 F.2d 409, 412–13 (5th Cir. 1984). The Court, moreover, dutifully follows the four guiding principles established by the United States Supreme Court regarding arbitrability. First, and of crucial relevance to the matter now before the Court, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648, 106 S.Ct. 1415,

1418, 89 L.Ed.2d 648 (1986). Second, unless the parties "clearly and unmistakably provide otherwise, the question of [arbitrability] ... is to be decided by the court." *Id.* at 649, 106 S.Ct. at 1418. Third, in deciding arbitrability, "a court is not to rule on the potential merits of the underlying claims." *Id.* at 649, 106 S.Ct. at 1419. Fourth, "where the contract contains an arbitration clause, there is a presumption of arbitrability ... 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.* at 650, 106 S.Ct. at 1419 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 584–85, 80 S.Ct. 1347, 1353–54, 4 L.Ed.2d 1409 (1960)). An express provision excluding a particular. grievance from arbitration may, however, overcome this presumption. *See id.*

■ When confronted with the question of arbitrability, a district court must determine, as a threshold matter, whether the grievance before it is subject to arbitration. *See Folse v. Richard Wolf Med. Instruments Corp.,* 56 F.3d 603, 605 (5th Cir.1995); *Oil, Chem. & Atomic Workers Int'l Union Local 4–227 v. Phillips 66 Co.,* 976 F.2d 277, 278 (5th Cir.1992). This determination mandates two specific inquiries. The Court first asks whether there is a valid agreement to arbitrate; if so, the Court then asks whether the dispute in question falls within the scope of the agreement. *See Webb v. Investacorp, Inc.,* 89 F.3d 252, 257–58 (5th Cir.1996). Ordinary state contract law will generally guide the Court in ruling on arbitrability. *See id.* at 258. However, while the Court applies state contract law, it will nevertheless give " 'due regard ... to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration.'" *Id.* (quoting *Volt Info. Sciences,*

489 U.S. at 475–76, 109 S.Ct. at 1253–54). Here, the Court need make only the first of these two determinations, that is whether a valid agreement to arbitrate exists.[1]

### B. *Validity of the Arbitration Agreements*

■ Section 2 of the FAA provides that agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9. U.S.C. § 2. Plaintiffs Soto and Valles maintain that the arbitration agreements are unconscionable and hence invalid because they could not read English at the time that they signed the documents. At the outset, the Court must decide whether the claims of arbitrability are themselves subject to arbitration. Defendant contends that under the terms of the agreements, the parties agreed to submit questions of arbitrability to arbitration. Plaintiffs Soto and Valles, however, make a claim of procedural unconscionability. Such claims are for the Court to decide when they relate specifically to the arbitration clause. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967) (holding that if the claim "goes to the 'making' of the agreement to arbitrate ... the federal court may proceed to adjudicate it"); *Rojas v. TK Communications, Inc.,* 87 F.3d 745, 749 (5th Cir.1996) (holding that "[b]ecause [Plaintiff's] claim [of unconscionability] relates to the entire agreement, rather than just the arbitration clause, the FAA requires [the] claims to be heard by an arbitrator"); *R.M. Perez & Assoc., Inc. v. Welch,* 960 F.2d 534, 538 (5th Cir.1992) (holding that if a fraud claim relates specifically to the arbitration clause, rather than the entire agreement, then the Court decides the issue). Here, the entire agreement

1. Plaintiffs do not dispute that their claims would fall within the scope of the arbitration agreement if the agreement were otherwise valid. The arbitration agreements are governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), because they involve a "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2.

relates to arbitration. This is not a situation where the workers signed employment contracts containing an arbitration clause. Thus, the claim of unconscionability necessarily relates specifically to the arbitration agreement, and hence the Court, not an arbitrator, should decide the issue. *Cf. Miller v. Public Storage Mgmt., Inc.,* 121 F.3d 215, 218–19 (5th Cir.1997) (holding that a claim of fraud in the inducement is subject to arbitration when it relates to the entire agreement, not just the making of the arbitration agreement).

■ Plaintiffs and Defendant refer to Texas law. Therefore, the Court assumes that Texas law applies to the validity of the arbitration agreements. *See Ferguson v. F.D.I.C.,* 164 F.3d 894, 897 (5th Cir.1999) (holding that a party has " 'an obligation to call the applicability of another state's law to the [district] court's attention' ") (quoting *Kucel v. Walter E. Heller & Co.,* 813 F.2d 67, 74 (5th Cir.1987)), *cert. denied,* 528 U.S. 819, 120 S.Ct. 61 (1999). Under Texas law, contracts which are unconscionable are invalid and unenforceable. *See In re Turner Bros. Trucking Co., Inc.,* 8 S.W.3d 370, 376 (Tex.App.—Texarkana 1999, no pet.). "Unconscionable" describes a contract "that is unfair because of its overall one-sidedness or the gross one-sideness of one of its terms." *Pony Express Courier Corp. v. Morris,* 921 S.W.2d 817, 821 (Tex.App.—San Antonio 1996, no writ). Unconscionability has both procedural and substantive aspects. Procedural unconscionability encompasses "how . . . the parties arrive[d] at the terms in controversy." *In re Turner Bros. Trucking,* 8 S.W.3d at 376. Substantive unconscionability relates to the "legitimate commercial reasons justifying the terms of the contract." *Id.*

Factors for the Court to consider include "the entire atmosphere in which the agreement was made; the alternatives, if any, available to the parties at the time the contract was made; the 'nonbargaining ability' of one party; whether the contract was illegal or against public policy; and whether the contract was oppressive or unreasonable." *Id.* Unconscionability is a question of law for the Court to decide. *Arthur's Garage, Inc. v. Racal–Chubb Sec. Sys., Inc.,* 997 S.W.2d 803, 815 (Tex.App.— Dallas 1999, no pet.).

■ In this case, there is substantial evidence that the arbitration agreements are unconscionable. The arbitration agreements were written in English. Plaintiffs testify in sworn affidavits presented to the Court that they could not read English at the time that they signed the arbitration agreement. The affidavits also state that the documents were not translated for them and that they did not know the nature of the agreement into which they were entering. According to Plaintiffs, their superiors told them not to worry about it and to quickly sign the documents so they could get back to work.[2] In *In re Turner Bros Trucking,* the Texas Court of Appeals held that an arbitration agreement was procedurally unconscionable because 1) the employee who signed the agreement was functionally illiterate, and 2) the employee had no one to explain the document to him and he did not understand it. 8 S.W.3d at 377. In this case, the Plaintiffs were illiterate in that they did not speak and hence could not read English. The contracts they signed were in English. They were not given a translation of the agreements and testified that they were pressured into signing them. Under the circumstances, the Court con-

2. Defendant does not counter this evidence, except to object to the affidavits as inadmissable hearsay. This argument is absurd. Under Rule 802 of the Federal Rules of Evidence, hearsay is not admissible "except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority." Rule 43(b) of the Federal Rules of Civil Procedure specifically allows that "[w]hen a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties." The Court's business would come to a screeching halt if it could not consider affidavits accompanying motions. Moreover, the fact that the affidavits claiming that Plaintiffs do not speak English happen to be in English is not determinative of anything. The Court presumes that they were translated for the Court's benefit.

cludes that the arbitration agreements are procedurally unconscionable.[3] Support for this conclusion exists in the decisions of other jurisdictions as well. *See Cancanon v. Smith Barney, Harris, Upham & Co.,* 805 F.2d 998, 999–1000 (11th Cir.1986) (holding that an arbitration agreement was invalid because the agreements were in English and Plaintiffs had no knowledge of the English language).

Plaintiff Jose Llanas has not responded to Defendant's Motion and the time for doing so has expired. His failure to respond within the required deadline is taken as a representation of no opposition under Local Rule 7.4. Thus, the Court refers his claims to arbitration.[4] Doing so, however, the Court does not find it necessary to stay the claims brought by the other Plaintiffs. *See Zimmerman v. International Cos. & Consulting, Inc.,* 107 F.3d 344, 346 (5th Cir.1997) (holding that the mandatory stay provisions of the FAA do not apply to those not contractually bound to arbitration).

### III. CONCLUSION

For the reasons stated above, Defendant's Motion to Compel Arbitration is **GRANTED IN PART, DENIED IN PART.** The Court **GRANTS** Defendant's

Motion as to Plaintiff Jose Llanas. Plaintiff Llanas is **ORDERED** to undergo binding arbitration pursuant to the terms of his agreement with Defendant. Plaintiff Sally Beth Flores's claim for loss of consortium is **STAYED PENDING ARBITRATION** of her husband's claims. Defendant's Motion is **DENIED** as to Plaintiff's Angel and Michelle Soto and Victor and Maria Valles. The parties are to bear their own costs in the matter incurred herein to date.

**IT IS SO ORDERED.**

---

**3.** In their Reply to Plaintiffs' Response, Defendant cites Texas cases which hold that illiteracy is not a defense to a written contract. *See Vera v. North Star Dodge Sales, Inc.,* 989 S.W.2d 13,17 (Tex.App.—San Antonio 1998, no pet.) ("Absent proof of mental incapacity, a person who signs a contract is presumed to have read and understood the contract, unless he was prevented from doing so by trick or artifice.' "); *Brown v. Aztec Rig Equip., Inc.,* 921 S.W.2d 835, 846 (Tex.App.—Houston [14th Dist.] 1996, writ denied) (holding that "illiteracy will not relieve a party of the consequences of [a] contract"); *Nguyen Ngoc Giao v. Smith & Lamm, P.C.,* 714 S.W.2d 144, 146 (Tex.App.—Houston [1st Dist.] 1986, no writ) ("[I]f a party is unable to read the contract, he must have it read to him."). These cases, which concern persons who can speak English, unlike Plaintiffs, contradict *In re Turner Brothers.* Furthermore, this Court is not bound by the ruling of intermediate state courts when deciding questions of state law. *See Matheny v. Glen Falls Ins.*

*Co.,* 152 F.3d 348, 354 (5th Cir.1998) (holding that the decisions of intermediate state courts merely provide guidance). The Court predicts that the Texas Supreme Court would hold that while illiteracy of the person making a contract does not by itself make the contract unconscionable, when as here there is also a language barrier and the person was pressured into signing the agreement quickly, the Court would be well within its discretion to find the contract to be procedurally unconscionable. Moreover, this is not a case where a party seeking to avoid arbitration simply claims not to have read the contract, though having had the opportunity and ability to do so. *See e.g. EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 90 (Tex.1996).

**4.** Although Plaintiff Sally Beth Flores is not a signatory to the arbitration agreement, her claim for loss of consortium is wholly dependant on her husband's claim. Thus, the Court stays her claim pending the arbitration of her husband's claims.