WALTER OIL & GAS CORPORATION, Plaintiff,

v.

TEEKAY SHIPPING, in personam, and the M/V Orkney Spirit, and her engines, furniture, apparel, etc., in rem, Defendants/Third–Party Plaintiffs,

v.

Skaugen Petrotrans, Inc., Third–Party Defendant.

No. G–03–008.

United States District Court, S.D. Texas, Galveston Division.

May 30, 2003.

engines, tackle, furniture, apparel, etc., in rem.

***ORDER DENYING THIRD–PARTY DEFENDANT SKAUGEN PETRO-TRANS, INC.'S MOTION TO TRANSFER VENUE, DENYING SKAUGEN PETROTRANS, INC.'S MOTION TO DISMISS THIRD-PARTY COMPLAINT, DENYING SKAUGEN PETROTRANS, INC.'S MOTION TO STAY THE COM-PLAINT OF WALTER OIL & GAS CORPORATION PENDING ARBI-TRATION, AND PARTIALLY GRANTING AND PARTIALLY DE-NYING SKAUGEN PETROTRANS, INC.'S MOTION TO STAY THIRD-PARTY COMPLAINT***

KENT, District Judge.

Plaintiff Walter Oil & Gas Corporation ("Walter") brings this action against Teekay Shipping, *in personam* ("Teekay")[1], and the M/V ORKNEY SPIRIT, *in rem* ("Vessel")[2] (hereinafter, Teekay and Bona will be referred to collectively as "Defendants"), for damages it sustained because the Vessel's anchor allegedly damaged one of Walter's sub-sea natural gas pipelines. Following the initiation of this lawsuit, Bona (the owner of the Vessel) filed a third-party complaint against Skaugen Petrotrans, Inc. ("Skaugen") alleging that Skaugen chartered the Vessel and is ultimately responsible for any damages the Mooring Master, which Skaugen provided, caused under the lightering contract. Now before the Court is Skaugen's Motion to Transfer Venue, Skaugen's Motion to Dismiss/Stay the Third–Party Complaint, and Skaugen's Motion to Stay the Complaint of Walter Oil & Gas Corporation Pending

Gray Hampton Miller, Steven Lynn Roberts, Fulbright & Jaworski, Houston, TX, for Walter Oil & Gas Corporation.

James Patrick Cooney, Royston Rayzor, et al., Houston, TX, for Teekay Shipping, in personam, M/V Orkney Spirit, and her

1. Teekay is a subsidiary of the Vessel's operator.

2. On February 3, 2003, Bona Shipholding, Ltd. ("Bona") filed its Verified Statement of Right or Interest to the Vessel and a Restricted Answer on behalf of the Vessel.

Arbitration, and the timely Responses thereto. After careful thought and consideration, and for the reasons articulated below, the Court **DENIES** Skaugen's Motion to Transfer Venue, **DENIES** Skaugen's Motion to Dismiss Third–Party Complaint, **DENIES** Skaugen's Motion to Stay Walter's Complaint, **PARTIALLY GRANTS** Skaugen's Motion to Stay Third–Party Complaint, and hereby STAYS Bona's claims against Skaugen for contribution and indemnity *only* **PENDING RESOLUTION OF THEIR ARBITRATION**, and **PARTIALLY DENIES** Skaugen's Motion to Stay Third–Party Complaint as to any other relief sought.

## INTRODUCTION

On December 27, 2002, Bona chartered its Vessel to Skaugen pursuant to a lightering contract ("Contract"). During the relevant times, as best as the Court can tell from the pleadings, Bona owned the Vessel, Teekay operated [3] the Vessel, and Skaugen chartered the Vessel.[4] The charter of the Vessel began when it was offshore of Galveston. The Vessel arrived at the Southwest Pass Lightering area on January 6, 2003. After completion of the pre-lightering operations, the Vessel awaited the arrival of the ship to be lightered. The two vessels attempted to moor so that they could perform their transfer operations, but they were unsuccessful due to inclement weather. While Skaugen was operating the Vessel on January 7, 2003, the Vessel's anchor damaged one of Walter's sub-sea natural gas pipelines, which was located offshore at South Timbalier Blocks 255 and 260. The accident severely damaged the pipeline causing its associated wells to catch fire, shut in, and cease production. Walter sued Defendants alleging that its pipeline was clearly marked on the Vessel's charts. On February 5, 2003, Bona filed a third-party complaint against Skaugen pursuant to Federal Rule of Civil Procedure 14(c). Bona alleges that Skaugen, pursuant to the Contract, was responsible for providing the Vessel with a Mooring Master "who had effective operational control of the lightering operation, including but not limited to the movement and positioning of both the mother vessel and the Vessel." Bona further alleges that to the extent the Vessel's anchor damaged Walter's pipeline, Skaugen is solely responsible under the Contract for the Mooring Master's negligence.

Skaugen responds by pointing to the Contract's arbitration agreement, which states that "[a]ny and all difference and disputes of whatsoever nature arising out of this Charter shall be put to arbitration in the City of New York ...." Skaugen also contends that the controlling provision of the Contract's indemnity clause exculpates it from any liability. According to Skaugen, the relevant provision, titled "SPT Mooring Master Liability Clause," provides:

3. Teekay apparently did not have complete operational control of the Vessel because Skaugen provided the Vessel with a Mooring Master, whose performance is at the center of Walter's and Defendants' negligence claims.

4. The Court had difficulty ascertaining the exact relationships between the Parties. The Court specifically refers to Bona and Teekay as "Defendants" because it is difficult to determine their precise relationship (and Counsel for Teekay and Bona refers to the entities jointly). It is clear that Bona is the owner of the Vessel and that Skaugen chartered the Vessel, despite the fact that Walter's Complaint alleges that Teekay is the owner of the Vessel. The Court notes that Bona filed the third-party complaint against Skaugen, but that in its Response to Skaugen's Motion to Dismiss/Stay the Third–Party Complaint, Bona *and* Teekay responded together as "Defendants" in the same motion (even though it appears that Bona is the only party seeking contribution and indemnity under the Contract).

The Master of each vessel shall throughout the STS cargo transfer operation be responsible for the safe operation of his vessel. The Mooring Master provided by SPT shall coordinate the STS transfer operation, serving as advisor only and assisting the masters in assuring that the requirements of all ICS/OCIMF Guidelines, SPT and U.S. Coast Guard Regulations and prudent seamanship are met. *Neither the MM or his employer shall be responsible* for any damages, losses, expenses and/or costs of any nature whatsoever, including without limitation any loss of time and/or delays that may be incurred or sustained by either party or *third party* arising out of, or in the matter related to the STS transfer between vessels, *even if said claims and or damages, losses, delays, expenses or costs arise out of the negligence of the Mooring Master.*

(emphasis added).[5] Skaugen urges the Court to dismiss Bona's third-party complaint because all of Bona's claims are within the broad scope of the Contract's arbitration provision and are arbitrable. Similarly, Skaugen urges the Court to stay the entire lawsuit pending the resolution of arbitration because "[p]ermitting Plaintiff's suit to move forward during arbitration will severely prejudice Third–Party Defendant's rights to meaningful arbitration and nullify the strong federal policy in favor of arbitration." Alternatively, Skaugen asks the Court to stay Bona's third-party complaint pending arbitration.

Walter and Defendants argue that the Court cannot dismiss the third-party complaint because under Federal Rule of Civil Procedure 14(c), Skaugen is now directly liable to Walter. Hence, procedurally,

Skaugen is both a defendant and a third-party defendant, and claims other than Bona's claims for contribution and indemnity under the Contract are now at issue after the Rule 14(c) tender. Walter argues that any dismissal of the third-party complaint because of the arbitration agreement will dismiss his claims against Skaugen, despite the fact that Walter was not a party to the Contract. Likewise, Walter and Defendants urge the Court to stay Bona's claims for contribution and indemnity only, allowing Walter to proceed on its claims against Defendants and Skaugen. Then, following the trial of Walter's claims, Skaugen and Bona may fight out who must pay the judgment, if any, in arbitration.

## ANALYSIS

*Motion to Transfer Venue to Houston*

 Rather curiously, Skaugen seeks to transfer this lawsuit to the Houston Division pursuant to Federal Rule of Civil Procedure 12(b)(3). A 12(b)(3) motion seeks dismissal of an action when venue is improper under 28 U.S.C. § 1391. However, Skaugen does not contend that this forum is improper in the substance of its Motion; rather, it argues that a trial in Galveston is inconvenient. Accordingly, the Court will construe Skaugen's Motion as seeking a transfer to the Houston Division of this District pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Under § 1404, the party seeking the transfer bears the burden of demonstrating that

---

5. Defendants argue that the Fixture Recap contains a revision to the SPT Mooring Master Liability Clause, which deleted the italicized and underlined "even" and replaced it with "except." Thus, following the modification, Defendants contend that the provision reads that the Master of the Vessel is liable ... "[e]xcept if said claims and/or damages, losses, delays, expenses or costs arise out of the negligence of the Mooring Master."

the Court should, in its sound discretion, transfer the action. *See Peteet v. Dow Chem.Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (noting that the decision to transfer a case rests exclusively within the sound discretion of the district court); *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966) (highlighting that the movant bears the burden of demonstrating that the action should be transferred). When considering whether a transfer is warranted, the Court considers the following factors: the witnesses' and parties' availability and convenience; the location of pertinent books and records; the cost of obtaining attendance of witnesses and other trial expenses; the place of the alleged wrong; the possibility of delay and prejudice if the transfer is granted; and the plaintiff's choice of forum.[6] *See, e.g., Henderson v. AT & T Corp.*, 918 F.Supp. 1059, 1065 (S.D.Tex. 1996); *Dupre v. Spanier Marine Corp.*, 810 F.Supp. 823, 825 (S.D.Tex.1993); *Hogan v. Malone Lumber, Inc.*, 800 F.Supp. 1441, 1443 (E.D.Tex.1992); *United Sonics, Inc. v. Shock*, 661 F.Supp. 681, 682–83 (W.D.Tex.1986). Generally, a plaintiff's choice of forum is entitled to great deference. *See Continental Airlines, Inc. v. American Airlines, Inc.*, 805 F.Supp. 1392, 1395–96 (S.D.Tex.1992) (discussing the importance of the plaintiff's choice of forum in light of the policies underlying § 1404(a)); *United Sonics*, 661 F.Supp. at 683 (stating that the plaintiff's choice of forum is "most influential and should rarely be disturbed unless the balance is strongly in defendant's favor").

 In support of its Motion to Transfer Venue, Skaugen argues that a Houston forum would be more convenient because (1) the accident occurred offshore of Louisiana, not Galveston; (2) all of the Parties maintain their principal places of business in Houston; (3) Skaugen's witnesses who observed the accident aboard the Vessel, witnesses who signed the Contract, and witnesses who are familiar with the lightering operations training program reside in Houston; and (4) Plaintiff will not be prejudiced by a transfer since the Rule 16 Scheduling Conference was recently held on April 2, 2003. In response, Walter and Defendants argue that Skaugen fails to meets its burden of demonstrating persuasive reasons for this Court to disturb Walter's choice of forum. Specifically, Walter and Defendants contend that (1) Skaugen, as a third-party defendant, may not move to transfer venue based upon its convenience because statutory venue limitations do not apply to third-party defendants brought in under Fed.R.Civ.P. 14; (2) Skaugen's witnesses are entitled to little consideration because they are Skaugen employees, and therefore, Skaugen can compel their attendance at trial; (3) the location of the accident does not favor transfer of this action to Houston over Galveston since it occurred offshore of Louisiana; (4) the Vessel's Master and Mate reside in Norway and Poland, respectively, and travel to Galveston is no more inconvenient than travel to Houston; (5) the damage expert agreed upon by the Parties resides in Lafayette, Louisiana, and traveling to Houston is no more inconvenient to him than traveling to Galveston; (6) Skaugen took delivery of the Vessel when it arrived outside the port of Galveston; (7) Skaugen has a substantial business presence in this Division, so it is disingenuous to argue that a trial in this forum is truly inconvenient; (8) three of the four Parties to this action prefer a trial in Galveston; (9) Walter will be severely

---

6. The Court no longer considers the location of counsel in its § 1404(a) analysis. *See In re Horseshoe Entertainment*, 305 F.3d 354, 358 (5th Cir.2002) ("The factor of 'location of counsel' is irrelevant and improper for consideration in determining the question of transfer of venue.").

prejudiced by further delaying the resolution of this action since a trial in the instant action is set for September 15, 2003, less than four months away; and (10) Walter's choice of forum is entitled to substantial deference.

The Court seriously doubts that Skaugen is entitled to seek a transfer as a third-party defendant. *See Gundle Lining Constr. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 209–10 (5th Cir.1996). "This is so because statutory venue considerations do not protect a third party brought into a lawsuit under Fed.R.Civ.P. 14." *Lafargue v. Union Pacific R.R.*, 154 F.Supp.2d 1001, 1004 (S.D.Tex.2001) (Kent, J.). "[T]he third-party defendant is protected against an inconvenient or oppressive forum by the requirement that the court have personal jurisdiction over him and the court's ability to take account of venue considerations when exercising its discretion to decide whether to disallow impleader or to sever the third-party claim." Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, 6 Federal Practice and Procedure § 1445 (2d ed.1990).

■ Even assuming Skaugen would be entitled to seek a transfer, Skaugen still fails to meet its burden of demonstrating that the relevant venue considerations merit disturbing Walter's choice of forum. Skaugen's arguments for transferring this action are essentially that a trial in Houston will be more convenient to its anticipated witnesses and to the Parties since they all maintain their offices in Houston. Generally, the convenience of *key* witnesses is arguably the most important factor in determining whether or not to transfer an action. *See Continental Airlines*, 805 F.Supp. at 1396. However, the Court finds that these witnesses' convenience is entitled to little consideration because they are Skaugen employees. *See id.* at 1397 (explaining that the convenience of key witnesses, who are also employees of the party moving for transfer, is given little consideration because that party may compel their attendance). Moreover, three of the four Parties to this action prefer a trial before this Court despite the fact that their principal places of business are in Houston.

Since the Court believes Skaugen's arguments are particularly lacking, especially in light of its status as a third-party defendant, the Court currently has no basis to disturb Walter's choice of forum, especially considering the great deference owed to a plaintiff's choice of forum. *See United Sonics*, 661 F.Supp. at 683. Further, the Court fails to see how Skaugen is inconvenienced by defending this lawsuit in this forum given its large business presence in this Division. *See Blansett v. Continental Airlines, Inc.*, 203 F.Supp.2d 736, 743 (S.D.Tex.2002). Moreover, it is not as if Skaugen must travel across the United States to the Everglades of Florida, to the bustling Northeast, or to the ports of Seattle; rather, it must simply jump on Interstate 45 for an enjoyable and scenic drive that routinely takes forty-five minutes or less. *See Smith v. Colonial Penn Ins. Co.*, 943 F.Supp. 782, 784 (S.D.Tex. 1996) (Kent, J.); *see also Continental Airlines*, 805 F.Supp. at 1397 ("[I]t is not as if the key witnesses will be asked to travel to the wilds of Alaska or the furthest reaches on the Continental United States."). On that note, given the extensive construction that engulfs downtown Houston, the Court expects that traveling to Galveston is often more convenient for Houston residents than traveling to downtown Houston itself. Most importantly to this Court, this case has a firm trial setting on September 15, 2003. A transfer at this juncture would severely prejudice Walter and unduly delay the resolution of its claims.

After balancing all of the relevant factors and applying them to the instant case,

this Court finds that Skaugen has failed to meet its heavy burden of demonstrating that convenience and the interests of justice predominate in favor of transferring this case to Houston. Thus, Skaugen's Motion to Transfer Venue is hereby **DENIED.**

*Motion to Dismiss Third–Party Complaint and Motions to Stay*

 At the outset, the Court observes that there is a strong federal policy favoring arbitration. *See Prevot v. Phillips Petroleum Co.,* 133 F.Supp.2d 937, 938 (S.D.Tex.2001) (Kent, J.) (citing *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 25, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991) (noting that the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), manifests a liberal federal policy favoring arbitration agreements); *Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.,* 489 U.S. 468, 476, 109 S.Ct. 1248, 1254, 103 L.Ed.2d 488 (1989); *Life of Am. Ins. Co. v. Aetna Life Ins. Co.,* 744 F.2d 409, 412–13 (5th Cir.1984)). Moreover, the Court adheres to the four guiding principles the United States Supreme Court established regarding arbitrability. *See Prevot,* 133 F.Supp.2d at 938. First, and of particular relevance to the Motions before the Court, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc. v. Communications Workers of Am.,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). Second, unless the Parties "clearly and unmistakably provide otherwise, the question of [arbitrability] ... is to be decided by the court." *Id.* at 649, 106 S.Ct. at 1418. Third, in deciding arbitrability, "a court is not to rule on the potential merits of the underlying claims." *Id.* at 649, 106 S.Ct. at 1419. Fourth, "where the contract contains an arbitration clause, there is a presumption of arbitrability ... 'unless it may be said with positive assurance that the arbitration

clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.* at 650, 106 S.Ct. at 1419 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 584–85, 80 S.Ct. 1347, 1353–54, 4 L.Ed.2d 1409 (1960)).

In analyzing if a claim is arbitrable, the Court must initially determine whether the dispute before it is subject to arbitration. *See Folse v. Richard Wolf Med. Instruments Corp.,* 56 F.3d 603, 605 (5th Cir. 1995); *Oil, Chem. & Atomic Workers Int'l Union Local 4–227 v. Phillips 66 Co.,* 976 F.2d 277, 278 (5th Cir.1992). This determination mandates two specific inquiries. First, the Court asks whether there is a valid agreement to arbitrate; if so, the Court then asks whether the claims before it fall within the scope of the agreement. *See Webb v. Investacorp, Inc.,* 89 F.3d 252, 257–58 (5th Cir.1996). If the Court finds an action otherwise arbitrable, "the Court then asks whether any policy or statute renders the dispute nonarbitrable." *Wilcox v. Valero Refining Co.,* 256 F.Supp.2d 687, 690 (S.D.Tex.2003) (Kent, J.) (citing *R.M. Perez & Assoc. v. Welch,* 960 F.2d 534, 538 (5th Cir.1992)); *see also Buckley v. Nabors Drilling USA, Inc.,* 190 F.Supp.2d 958, 960–65 (S.D.Tex.2002) (Kent, J.) (finding that seamen are specifically excluded from the FAA under 9 U.S.C. § 1).

 Clearly, an arbitration provision in a maritime contract is within the FAA's coverage. *See* 9 U.S.C. § 2. If the Court finds the instant claims are arbitrable, it must stay those particular claims within the lawsuit under Section 3 of the FAA, which provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit

is pending, *upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall* on application of one of the parties *stay the trial of the action* until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added). "If the issues in a case are within the reach of that [arbitration] agreement, the district court has no discretion under Section 3 to deny the stay." *Hornbeck Offshore Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 754 (5th Cir.1993). Further, although Section 3 of the FAA does not explicitly reference dismissal of a lawsuit, the Fifth Circuit has explained that "[i]f all of the issues raised before the district court are arbitrable, dismissal of the case is not inappropriate." *Fedmet Corp. v. M/V BUYALYK*, 194 F.3d 674, 678 (5th Cir.1999); *see also Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir.1992).

■ Skaugen argues that all of Bona's claims in its third-party complaint are covered by the Contract's broad arbitration provision. As such, Skaugen contends that the third-party complaint should be dismissed with prejudice, or at least stayed pending the resolution of arbitration. Additionally, Skaugen submits that the Court should use its discretionary powers to fashion a stay that also includes Walter's claims because "Skaugen, under the terms of its own contract, can have no liability to Walter as Bona has agreed that Skaugen shall not be liable for third party damages." Skaugen argues that a trial on Walter's claims prior to arbitration will (1) unnecessarily burden the Court's docket; (2) prevent it from being able to arbitrate Bona's claims for contribution and indemnity; (3) bind it to the Court's determina-

tion of the damages owed Walter; and (4) will only result in wasting Skaugen's time and money defending the case because it will ultimately be absolved in arbitration.

■ The Court must respectfully disagree with Skaugen's reasoning. Bona's claims for contribution and indemnity against Skaugen are the only arbitrable claims-Skaugen and Defendants are parties to the Contract, there is a valid provision to arbitrate within the Contract, and Bona's claims for contribution and indemnity come within the provision's broad scope.[7] *See Webb*, 89 F.3d at 257–58. As to those claims only, a stay is mandatory. *See* 9 U.S.C. § 3. However, after Skaugen was impleaded under Fed.R.Civ.P. 14(c), Skaugen became both a third-party defendant as to Bona's claims for contribution and indemnity and a defendant to Walter's claims for negligence in operating the Vessel. *See* Fed.R.Civ.P. 14(c) ("When a plaintiff asserts an admiralty or maritime claim within the meaning of Rule 9(h), the defendant ... as a third party plaintiff, *may bring in a third-party defendant who may be wholly or partly liable, either to the plaintiff or to the third-party plaintiff,* by way of remedy over, contribution, or otherwise on account of the same transaction .... In such a case the third-party plaintiff may also demand judgment against the third-party defendant in favor of the plaintiff ... and the action *shall proceed as if the plaintiff had commenced it against the third-party defendant as well as the third-party plaintiff.*") (emphasis added). Walter's claims against Skaugen after the tender are not bound by any arbitration agreement because Walter was not a party to the Contract. Hence, although a portion of the claims against Skaugen after the third-party complaint are arbitrable, Walter's claims against Skaugen after the Rule 14(c) tender are

---

7. The Parties do not dispute that Bona's con- tribution and indemnity claims are arbitrable.

not; therefore, dismissing the third-party complaint is inappropriate. *See Fedmet,* 194 F.3d at 678 (explaining that *all of the claims* before a district court must be arbitrable in order to dismiss a lawsuit on account of an arbitration clause). Accordingly, Skaugen's Motion to Dismiss Third-Party Complaint is respectfully **DENIED.**

■ Although the Court does not have to stay Walter's claims against Skaugen, it may, in its discretion, stay them if allowing them to proceed would adversely affect Skaugen's right to arbitrate Bona's contribution and indemnity claims. *See Subway Equip. Leasing Corp. v. Forte,* 169 F.3d 324, 329 (5th Cir.1999). Generally, courts do not stay a plaintiff's lawsuit merely because a third-party defendant has an arbitration agreement with a third-party plaintiff. *See Zimmerman v. Int'l Cos. & Consulting, Inc.,* 107 F.3d 344, 346 (5th Cir.1997) *see also Texaco Exploration & Prod. Co. v. AmClyde Eng'rd Prods. Co.,* 243 F.3d 906, 910 (5th Cir.2001) ("The two policies [Fed.R.Civ.P. 14(c)'s liberal joinder policy and the FAA's policy favoring arbitration] do not necessarily conflict. If arbitration goes forward between Texaco and McDermott, it need not hold up or interfere with the admiralty litigation between Texaco and the other defendants.").[8] Skaugen bears a heavy burden of demonstrating that the Court should grant a discretionary stay. *See Bayoil Supply and Trading of Bahamas v. Jorgen Jahre Shipping AS,* 54 F.Supp.2d 691, 694 (S.D.Tex.1999) (Kent, J.) (explaining that the movant must prove that a discretionary stay is a genuine necessity).

■ First, although the Court appreciates Skaugen's concerns about its crushing case load, the Court is a better judge of its docket obligations and believes a stay of Walter's claims for that reason is inappropriate. *See id,* at 695. Second, the Court fails to see how Skaugen's rights to arbitrate are prejudiced if the Court stays Bona's claims against Skaugen pending arbitration, and proceeds with Walter's negligence claims against Defendants and Skaugen. Walter's tort claims are totally unrelated to Bona's third-party claims; thus, trying Walter's claims first in no way prejudices Skaugen's arbitration rights. *See id.* at 694. For example, assume Walter proceeds to trial and obtains a judgment against Defendants and Skaugen that apportions fault to each Party. Then assume Walter collects its judgment against each responsible Party. The SPT Mooring Master Liability Clause is drafted so that the party that is ultimately responsible will pay all of the expenses arising out of the Contract for all signatories to the Contract, including any attorneys' fees and litigation expenses spent defending Walter's claims at trial. Therefore, if Skaugen will be relieved of all liability based on the SPT Mooring Master Liability Clause, as it claims, it will be made whole from the resulting arbitration despite having to initially defend itself against Walter's claims.[9] Likewise, if Walter obtains a judgment and the Court sets its damages, it does not adversely affect

---

**8.** The Court also notes that *Texaco* involved a situation where Texaco, the plaintiff, and McDermott, the third-party defendant, were both signatories to an arbitration agreement. Although the Fifth Circuit stayed the claims between those two parties pending arbitration, it still refused to stay Texaco's other claims against other defendants.

**9.** The Court observes that if Bona were not solvent (which is not the case), it appears at first glance that Skaugen could be prejudiced if the Court required a trial on Walter's claims before arbitration. Yet, even in that situation, Skaugen still suffers no prejudice because arbitration or not, the SPT Mooring Master Liability Clause would not protect Skaugen from having to pay any judgment Walter obtained against Skaugen.

Skaugen's rights to arbitrate. Bona's and Skaugen's arbitration is a narrow one that presents only one question: Who is responsible under the SPT Mooring Master Liability Clause? The Court, not the arbitrators, will eventually have to calculate the damages that Walter suffered, so why does it matter if the Court sets the damages before or after the arbitration? The answer is that it does not.

Even though trying Walter's claims first will not prejudice Skaugen's arbitration rights, Skaugen argues that such is an inconvenience because Skaugen will be forced to waste its time and money defending itself at a trial despite the fact that it will allegedly be absolved at arbitration. The Court cannot agree. Although Skaugen may ultimately win at arbitration, the Court refuses to delve into the merits of Bona's arbitrable contribution and indemnity claims. Walter is injured and is concerned about being made whole, not with the subsequent determination of who is liable under the Contract. The Court emphasizes that staying Walter's case, a plaintiff that is a nonparty to an arbitration agreement, is only possible after a clear and unequivocal showing that the movant will be greatly prejudiced otherwise. The Court believes any burden on Skaugen of having to defend itself in a trial despite the fact that it potentially should have been indemnified under the Contract beforehand is *greatly outweighed* by the severe prejudice that would befall Walter by forcing it to stay this entire case in the face of a fast approaching September trial setting. Thus, for all of the reasons expressed above, the Court respectfully **DENIES** Skaugen's Motion to Stay Walter's Claims, **PARTIALLY GRANTS** Skaugen's Motion to Stay Third–Party Complaint, and hereby STAYS Bona's claims against Skaugen for contribution and indemnity *only* **PENDING RESOLUTION OF THEIR ARBITRATION,** and **PARTIALLY DENIES** Skaugen's Motion

to Stay Third–Party Complaint as to any other relief sought.

## CONCLUSION

The Court thanks Counsel for their excellent briefs and zealous advocacy. The Court has a symbiotic relationship with the bar and its job is made much easier when motions before it are well prepared. For all of the reasons articulated above, having considered the Parties' arguments, the evidence, and the applicable law, the Court hereby **DENIES** Skaugen's Motion to Transfer Venue, **DENIES** Skaugen's Motion to Dismiss Third–Party Complaint, **DENIES** Skaugen's Motion to Stay Walter's Complaint, **PARTIALLY GRANTS** Skaugen's Motion to Stay Third–Party Complaint, and hereby STAYS Bona's claims against Skaugen for contribution and indemnity *only* **PENDING RESOLUTION OF THEIR ARBITRATION,** and **PARTIALLY DENIES** Skaugen's Motion to Stay Third–Party Complaint as to any other relief sought. The Parties are to bear their own taxable costs, expenses, and attorneys' fees incurred herein to date.

**IT IS SO ORDERED.**