Pamela GREEN and Marcus
Green, Plaintiffs,

v.

W.R.M. & ASSOCIATES, LTD. d/b/a
Servicemaster Building Mainte-
nance, Defendant.

No. 1:00CV279–D–D.

United States District Court,
N.D. Mississippi,
Eastern Division.

Nov. 13, 2001.

Michael D. Cooke, Iuka, MS, for plaintiffs.

J. Douglas Ford, Studdart Ray & Ford, Columbus, MS, for defendant.

*OPINION*

DAVIDSON, Chief Judge.

Presently before the court is the Defendant's motion to compel arbitration pursuant to Section Four of the Federal Arbitration Act. Upon due consideration, the court finds that the motion should be granted.[1] In accordance with the parties' agreement, the Plaintiff Pamela Green's claims shall be submitted to arbitration, and the claims of the Plaintiff Marcus Green currently pending in the present court shall be stayed pending arbitration.

*A. Factual and Procedural Background*

The Plaintiffs, Pamela Green ("Green") and her husband, Marcus Green, filed this suit against Pamela Green's former employer, W.R.M. & Associates, Ltd., d/b/a ServiceMaster Building Maintenance ("ServiceMaster"), alleging various violations of state and federal law.

Green began working for ServiceMaster in March of 1997. Green was hired as a secretary by John Peters, who was her supervisor. Green asserts that shortly after her employment began, Peters began touching her, making lewd sexual comments, gestures, and promises in return for sexual favors. Green asserts that she reported this conduct to her immediate supervisor, Ada Spann.

Green filed a charge of discrimination with the EEOC on June 18, 1999, on the basis of sex harassment/discrimination. Apparently, mediation took place but to no avail. Green asserts that as a result of refusing Peters' advances and reporting his conduct, she was denied job advancements, raises, and excluded from company gatherings.

---

1. Defendant has requested the claims of Marcus Green, who did not sign any arbitration agreement, and whose claims are derivative of his wife Pamela Green's, be stayed pending the arbitration.

In August of 1999, Peters was transferred from the store where Green worked and Jim Black became Green's supervisor. On October 4, 1999, Green signed an acknowledgment that she received a copy of the ServiceMaster Employee Handbook, an acknowledgment that she had read the Sexual Harassment Company Position in the employee handbook, and an arbitration provision, agreeing to the terms set forth in ServiceMaster Arbitration Procedure. Spann's signature appears next to Green's on each of the agreements as the ServiceMaster Representative. Green asserts that after Jim Black became supervisor, she was subject to retaliation. Green claims that Black would often question her work, go through her mail, and that she was subjected to a hostile work environment. On February 7, 2000, Green was terminated by Jim Black.

In May of 2000, Green filed a supplemental charge of discrimination with the EEOC on the grounds of retaliation. She timely filed the complaint with this court on August 17, 2000. Before serving ServiceMaster, the Greens filed an amended complaint on December 12, 2000. The amended complaint was brought pursuant to 28 U.S.C. § 1331 for violations of Title VII and race discrimination violations of 42 U.S.C. § 1981. Marcus Green brought a claim for loss of consortium, services and companionship as a result of the alleged harassment of his wife. The Greens also asked the court to invoke pendent jurisdiction to hear and decide state law claims, including assault and battery, and intentional infliction of emotional harm. ServiceMaster answered on or about January 9, 2001. The parties engaged in discovery in July and August and responded to each other's written discovery requests. ServiceMaster asserted that "in assembling documents for production to the Plaintiffs, counsel for the Defendant discovered for the first time the Arbitration Agreement signed by the Plaintiff Pamela Green." At the first depositions conducted on September 25, 2001, counsel for ServiceMaster advised counsel for the Greens of the recent discovery. On or about September 27, 2001, ServiceMaster moved to dismiss the claims and compel arbitration.

The Greens argue that, at the least, the claims that accrued before Green signed the arbitration agreement are not within the scope of the agreement, and further, that ServiceMaster waived the arbitration agreement by answering the complaint and delaying in asserting the defense of the arbitration agreement. These arguments are discussed below.

### B. Discussion

### I. The Arbitration Agreement

 The Fifth Circuit has made clear that discrimination claims under Title VII can be subjected to compulsory arbitration under the Federal Arbitration Act. *Alford v. Dean Witter Reynolds, Inc.*, 939 F.2d 229 (5th Cir.1991). The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et. seq., "establishes that, as a matter of federal law, any doubts concerning the *scope of arbitrable issues* should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of *waiver, delay*, or a like defense to arbitrability." *OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)) (emphasis added). As with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability. *Pennzoil Exploration and Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1065 (5th Cir.1998).

■ Courts conduct a two-step inquiry when deciding whether parties must submit to arbitration. *OPE Int'l*, 258 F.3d at 445 (citing *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir.1996)). The first step is to decide whether the parties agreed to arbitrate their dispute. *See Webb*, at 258. "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* To resolve these issues, "courts generally ... should apply ordinary state-law principles that govern the formation of contracts." *Id.* Once a court determines that the parties agreed to arbitrate, the court must assess " 'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.' " *Id.*

■ The parties do not dispute that their Arbitration Agreement contains the following arbitration provision:

> By providing your signature below, you indicate your agreement to the terms set forth in the ServiceMaster Arbitration Procedure. By the provision of the signature of the ServiceMaster representative, ServiceMaster indicates its agreement, as well, to the terms set forth in this Procedure. Both parties understand that by agreeing to the terms in this Procedure, both are giving up rights they may possess to have claims decided in a court of competent jurisdiction and both are gaining the right to have disputes handled by arbitration.

Arbitration Agreement. The ServiceMaster Arbitration Procedure further states:

> Covered Claims.
>
> This agreement covers the following potential claims:
>
> 1. Any dispute regarding the arbitrability of any such claim;

> 2. Any dispute regarding this Agreement, including but not limited to its enforceability, scope or terms;
>
> 3. Includes, but is not limited to, any claim [for] ... assault, battery, ... infliction of emotional distress, ... or other tort claims, ... claims for discrimination (including but not limited to claims based on sex, pregnancy, race, ...) ... and claims for wrongful discharge and/or for violation of any federal, state or local law ....

As for the first step in the court's analysis, there is clearly a valid agreement to arbitrate between the parties. Green admitted in her deposition that she signed the Arbitration Agreement and she understood when she signed it that she agreed to arbitrate any disputes she had with ServiceMaster. *See* Green's Deposition at 78.

Turning to the question of whether the dispute in question falls within the scope of the arbitration agreement, the Greens argue that, at least the conduct of Peters that occurred before Green signed the Agreement is outside the scope and should not be arbitrable. As noted above, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *OPE Int'l*, 258 F.3d at 445. Furthermore, the ServiceMaster Arbitration Procedure specifically states "[t]his agreement covers the following potential claims: 1. Any dispute regarding the arbitrability of any such claim; 2. Any dispute regarding this Agreement, including but not limited to its enforceability, scope or terms."

In *R.M. Perez & Assocs., Inc. v. Welch*, 960 F.2d 534 (5th Cir.1992), the Fifth Circuit rejected the plaintiff's argument that because the transactions complained of took place before he signed the arbitration provision, the conduct could not be within

the scope of the arbitration agreement. *R.M. Perez*, 960 F.2d at 539. The court stated that this argument ignored the broad language of the Agreement which stated "I agree with you ... [that] all my relations and dealings with [you] are subject to this agreement ...." *Id.*

The Fifth Circuit has further stated that "arbitration clauses containing the 'any dispute' language ... are of the broad type" and absent allegations of fraud in the inducement, arbitration must proceed when an arbitration clause on its face appears broad enough to encompass the party's claims. *Hornbeck Offshore Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 755 (5th Cir.1993). In the present case, Green was clearly aware of ServiceMaster's alleged past wrongdoing (or the wrongdoing of their agents or employees) at the time of signing the Arbitration Agreement, which indicated her "agreement to the terms set forth in the ServiceMaster Arbitration Procedure." The ServiceMaster Arbitration Procedure is broad as it covers "[a]ny dispute regarding this Agreement" and further includes any claim for assault, battery, infliction of emotional distress, claims for discrimination based on sex or race, and claims for wrongful discharge. Green had reported Peters' alleged conduct to Spann, who also signed the agreement and apparently presented it to Green. This is consistent with the parties' intentions to give up their rights to sue in court for all of their potential claims, whether they occurred before or after the signing of the agreement.

Since the court has determined that the parties agreed to arbitrate, the court must assess whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims. The Greens assert, without citing any authority, that under contract law in Mississippi and the United States Constitution, "one cannot sign a contract that is *ex post facto*." As the court understands this argument, it simply reasserts that conduct prior to signing an arbitration agreement can not be within the scope of such an agreement, which was rejected in *R.M. Perez*. As such, the court finds that the Greens' arguments are not well taken and therefore turns to the issue of whether ServiceMaster waived its right to arbitrate the claims.

## II. Waiver

Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party. *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir.1986). However, there is a strong presumption against waiver of arbitration. *See, e.g., Lawrence v. Comprehensive Bus. Servs. Co.*, 833 F.2d 1159, 1164 (5th Cir.1987) ("Waiver of arbitration is not a favored finding and there is a presumption against it."); *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25, 103 S.Ct. 927 ("[A]s a matter of law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."). Accordingly, a party alleging waiver of arbitration must carry a heavy burden. *Associated Builders v. Ratcliff Constr. Co.*, 823 F.2d 904, 905 (5th Cir. 1987).

The Greens summarily state that to allow ServiceMaster to compel arbitration over nine months after filing its answer would "be highly prejudicial" to them.

*Walker v. J.C. Bradford & Co.*, 938 F.2d 575 (5th Cir.1991), provides an example of the Fifth Circuit's "hesitat[ion] to find that a party has waived its contractual right to arbitration." *Walker*, 938 F.2d at 577. In *Walker*, the plaintiffs sued in state court, alleging state securities law violations. Instead of immediately demanding arbitration, the defendant answered the complaint and participated in discovery. *Id.* at 576.

**464**

Thirteen months after the plaintiffs filed suit, and after the plaintiffs moved to transfer the case, the defendant sought to enforce its contractual right to arbitration. *Id.* Despite the defendant's delay and participation in the lawsuit, the court held that the defendant had not waived arbitration because the plaintiffs failed to show that they were "materially prejudiced" by the delay. *Id.* at 578.

In the present case, ServiceMaster filed its motion to compel arbitration on September 27, 2001, just over thirteen months after the Greens filed their original complaint. Also, it is undisputed that Service-Master was not served before the Greens filed their amended complaint months later on December 12, 2000. In any event, the Greens have failed to show that they were "materially prejudiced" by the delay. Therefore, the court finds that Service-Master did not waive its right to arbitrate.

*C. Conclusion*

For the above stated reasons, the Defendant ServiceMaster's motion to compel arbitration of the claims of Plaintiff Pamela Green is granted, and the Plaintiff Marcus Green's claims are stayed pending the arbitration.

A separate order in accordance with this opinion shall issue this day.

*ORDER*

Pursuant to an opinion issued this day, it is hereby ORDERED that

(1) the Defendant's petition seeking an order compelling arbitration (docket entry 22) is GRANTED;

(2) the Plaintiff Pamela Green's claims shall be submitted to arbitration, in accordance with the parties' Arbitration Agreement; and

(3) the remaining claims of the Plaintiff Marcus Green shall be STAYED pending arbitration; within fifteen days of the conclusion of the arbitration process, counsel for both parties shall jointly inform the court of the outcome of the proceedings.