**Glenn E. WILCOX Plaintiff,**

v.

**VALERO REFINING COMPANY Defendant.**

**No. CIV.A. G–02–852.**

United States District Court,
S.D. Texas,
Galveston Division.

April 3, 2003.

Stanley Byron Broussard, Houston, TX, for Glenn E Wilcox, plaintiff.

Thomas Michael Melo, Bracewell & Patterson, Houston, TX, for Valero Refining Company, defendant.

## ORDER DENYING DEFENDANT'S MOTION TO ABATE AND COMPEL ARBITRATION

KENT, District Judge.

Plaintiff Glenn E. Wilcox ("Plaintiff") brings this action to recover damages for injuries he incurred as a result of Defendant Valero Refining Company's ("Defendant") allegedly discriminatory conduct toward him during his employment with Defendant. Specifically, Plaintiff alleges that Defendant's conduct violated the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and that he has suffered severe emotional distress as a result. Now before the Court is Defendant's Motion to Abate and Compel Arbitration, and the timely response thereto. For the reasons stated below, Defendant's Motion is hereby **DENIED**.

### FACTUAL BACKGROUND

Plaintiff has been continually employed by Defendant at its oil and gas refinery in Texas City, Texas, since 1998. Plaintiff, an African–American, is employed on an at-will basis as a Lab Technician. Plaintiff alleges that he has been denied promotional opportunities during his tenure with Defendant solely because of his race. Further, Plaintiff contends that he has been subjected to a racially hostile work environment. Specifically, Plaintiff asserts that Keith Sharp, a white Lead Technician, made several overt and offensive racial slurs regarding African–Americans. Plaintiff complained to management about each of the above allegations, but Defendant allegedly failed to take any remedial steps to correct the situation. Plaintiff alleges that the discriminatory conduct continued through May 2002. In response to Defendant's perceived failure to take meaningful recourse, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission

("EEOC") on May 28, 2002. After concluding its investigation, the EEOC issued a Right to Sue Letter, and Plaintiff filed his lawsuit in this Court on December 10, 2002.

On January 1, 2002, Defendant purchased Ultramar Diamond Shamrock, Inc. ("UDS"). This fact is only significant because Defendant decided to adopt UDS's dispute resolution program, *Dialogue,* to resolve all disputes between Defendant and its employees. In April 2002, Defendant informed its employees that it intended to implement *Dialogue* ("*Dialogue*" or "Plan") as the exclusive means to resolve workplace disputes between it and its employees. Defendant did so by mailing each employee a copy of the Plan to their home address. An introductory letter, on page three of the Plan, introduces *Dialogue* to Defendant's employees and informs them that *Dialogue*'s implementation date is June 1, 2002. On page four of the Plan, a conspicuous bulletin, one page in size, titled "ATTENTION ALL EMPLOYEES," states:

> If an employee accepts or continues employment with Valero, both the employee and Valero agree to all provisions of Dialogue, the Valero Dispute Resolution Program (also referred to as Dialogue or the Program). This includes the requirement that any legal dispute not resolved through other Options, as discussed in this summary, be submitted to final and binding arbitration rather than through the courts or to a jury. This agreement covers any dispute with the Company or its employees, such as personal injury claims or claims of discrimination based on race, national origin, gender, religion, age or disability or claims under any federal or state statute, as well as claims under any Valero benefit plan and the Work Injury Program. This Program applies to any workplace dispute regardless of when it arises, including disputes that arise or

are asserted after an employee leaves the Company.

In an effort to ensure that its employees were aware of *Dialogue,* Defendant posted fourteen posters containing information about *Dialogue* at its Texas City refinery, and posted the entire Plan on the intranet. Further, Defendant's Human Resources Manager, Jeffery Guill, had an informational meeting with Plaintiff on October 18, 2002, to discuss *Dialogue.* Based upon the aforementioned, Defendant argues that Plaintiff agreed to *Dialogue* because he continued employment with Defendant past June 1, 2002; thus, he agreed to submit this dispute to final and binding arbitration consistent with *Dialogue.*

### *ANALYSIS*

*1. Legal standard for determining arbitrability.*

 At the outset, the Court notes that there is a strong federal policy favoring the arbitration process. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 25, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991) (observing that the Federal Arbitration Act manifests a liberal federal policy favoring arbitration agreements); *Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.,* 489 U.S. 468, 476, 109 S.Ct. 1248, 1254, 103 L.Ed.2d 488 (1989); *Life of Am. Ins. Co. v. Aetna Life Ins. Co.,* 744 F.2d 409, 412–13 (5th Cir. 1984). When confronted with the question of arbitrability, the Court must determine, as a threshold matter, whether the dispute before it is subject to arbitration. *See Folse v. Richard Wolf Med. Instruments Corp.,* 56 F.3d 603, 605 (5th Cir.1995); *Oil, Chem. & Atomic Workers Int'l Union Local 4–227 v. Phillips 66 Co.,* 976 F.2d 277, 278 (5th Cir.1992). This determination mandates two specific inquiries. The Court first asks whether there is a valid agreement to arbitrate; if so, the Court

then asks whether the dispute in question falls within the scope of the agreement. *See Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir.1996). In analyzing if the dispute is subject to arbitration, the Court should generally apply " 'ordinary state-law principles that govern the formation of contracts.' " *Id.* (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995)).

■ If the Court finds that a dispute is subject to arbitration, the Court then asks whether any policy or statute renders the dispute nonarbitrable. *See R.M. Perez & Assoc., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir.1992). The Fifth Circuit has already determined that Title VII claims are arbitrable. *See Alford v. Dean Witter Reynolds, Inc.*, 939 F.2d 229, 230 (5th Cir. 1991) ("We hold that Title VII claims, like ADEA claims, are subject to arbitration under the FAA.").

### 2. Enforcement of Dialogue is procedurally unconscionable.

■ The Court feels compelled to take its analysis somewhat out of order so that it may first address the issue that controls the resolution of Defendant's Motion. Assuming, *arguendo,* that Plaintiff did otherwise agree to *Dialogue* by continuing his employment with Defendant past June 1, 2002, the Court finds the fact that Plaintiff had essentially initiated his lawsuit before *Dialogue* was implemented, by filing a Charge of Discrimination with the EEOC, renders enforcement of *Dialogue* procedurally unconscionable.

■ The Court determines whether or not an arbitration provision is unconscionable when the claim of unconscionability relates directly to the arbitration provision itself. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967) ("We hold, therefore, that in passing upon a s[ection] 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate."); *Rojas v. TK Communications, Inc.*, 87 F.3d 745, 749 (5th Cir.1996) ("Because her [unconscionability] claim relates to the entire agreement, rather than just the arbitration clause, the FAA requires that her claims be heard by an arbitrator."). In this case, Plaintiff's unconscionability claims necessarily relate to the arbitration provision at issue since *Dialogue*'s sole purpose is to create a dispute resolution program that binds Defendant and its employees. *See Prevot v. Phillips Petroleum Comp.*, 133 F.Supp.2d 937, 939–40 (S.D.Tex.2001) (Kent, J.) (explaining that unlike a situation where an arbitration clause is contained within an employment contract, unconscionability should be determined by the Court when the entire agreement relates to arbitration). Therefore, the Court is charged with deciding this issue, not an arbitrator.

■ There are two types of unconscionability: (1) procedural unconscionability, which refers to how the parties arrived at an agreement and the circumstances surrounding such, and (2) substantive unconscionability, which relates to the fundamental fairness of the actual agreement. *See In re Halliburton Comp.*, 80 S.W.3d 566, 572 (Tex.2002). In Texas, unconscionability is a question of law. *See Arthur's Garage, Inc. v. Racal–Chubb Sec. Sys., Inc.*, 997 S.W.2d 803, 815 (Tex.App.-Dallas 1999, no pet.). Further, Plaintiff bears the burden of proving that compelling him to arbitration, as required by *Dialogue,* is unconscionable. *See In re Oakwood Mobile Homes*, 987 S.W.2d 571, 573 (Tex. 1999). Courts have had a difficult time defining unconscionability and in ascertaining the factors that they should weigh when analyzing whether an agreement is

unconscionable. *See Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 498–99 (Tex.1991) (Gonzales, J., concurring). One Texas appeals court suggested considering "the entire atmosphere in which the agreement was made; the alternatives, if any, available to the parties at the time the contract was made; the 'non-bargaining ability' of one party; whether the contract was illegal or against public policy; and whether the contract was oppressive or unreasonable." *In re Turner Bros. Trucking Co.,* 8 S.W.3d 370, 376 (Tex.App.-Texarkana 1999, orig. proceeding). A comment to the Restatement provides that a "determination that a contract or term is or is not unconscionable is made in the light of its setting, purpose and effect." Restatement (Second) of Contracts § 208 cmt. a (1981) (explaining that a term may be found unenforceable on public policy grounds).

Plaintiff argues that enforcement of *Dialogue* is procedurally unconscionable.[1] Plaintiff contends that enforcing *Dialogue* is unconscionable because it would be applied to Defendant's conduct that occurred before the implementation of *Dialogue.* Defendant responds by citing the *Dialogue* plan, which indicates that it applies to "any workplace dispute, regardless of when it arises ...." The Court cannot conclude that compelling Plaintiff to arbitration, merely because Defendant's allegedly unlawful conduct occurred before the implementation of *Dialogue,* is unconscionable. *See R.M. Perez & Assoc.,* 960 F.2d at 539 (rejecting a similar argument because it contravenes the express language of the arbitration agreement); *Green v. W.R.M. & Assoc., Ltd.,* 174 F.Supp.2d 459, 462–63 (N.D.Miss.2001).

Additionally, Plaintiff asserts that he cannot be compelled to mandatory arbitration because he had essentially initiated his claim, by filing a Charge of Discrimination with the EEOC on May 28, 2002, before the implementation of *Dialogue* on June 1, 2002. The Court agrees. It is undisputed that Plaintiff was required to file a Charge of Discrimination before he could receive a Right to Sue letter, which then enabled him to bring his present suit against Defendant. Hence, Plaintiff initiated the machinery of the justice system on May 28, 2002, before Defendant implemented its Plan. The Court refuses to believe that a defendant can implement a dispute resolution program, which contains binding arbitration, once a plaintiff has already initiated a lawsuit against a defendant. If a defendant were allowed to do such, a defendant could essentially change the rules in the middle of the game and prevent a plaintiff from having his day in court. Similarly, in this case, Plaintiff had begun to bring his action before the Plan was officially implemented. Although technically his lawsuit was not filed in this Court until December 10, 2002, after he received his Right to Sue letter, the Court finds that it is disinguous to conclude that he did not "bring" his action until that date, for purposes of this analysis, because Plaintiff was required to file a Charge of Discrimination with the EEOC before he could file his lawsuit. Any other result does not pass the smell test. Applying a few important factors of the many that constitute procedural unconscionability, the Court finds that Plaintiff had limited alternatives other than accepting *Dialogue,* that he had limited bargaining ability as an at-will employee, and that, most importantly, allowing Defendant to usurp Plaintiff's claims, and bind him to its dispute resolution program after he had essentially initiated his lawsuit in the courts

---

1. Although Plaintiff briefly argues that enforcing *Dialogue* is substantively unconscionable because Defendant failed to require an affirmative acknowledgment, the Court thinks that this argument is better placed under the guise of procedural unconscionability.

of the United States, is fundamentally and manifestly unfair, and contrary to public policy. *See In re Turner Bros. Trucking Co.*, 8 S.W.3d at 376.

The Court wishes to make abundantly clear that its holding does not contravene the numerous holdings of this Court that an employer may restrain an employee's access to the courts in an effort to efficiently resolve disputes through an alternative resolution program. But, an employer is not allowed to implement a dispute resolution program after a plaintiff has filed his lawsuit and prevent a plaintiff from having access to the courts. Accordingly, for all of the reasons articulated above, the Court respectfully **DENIES** Defendant's Motion.

**IT IS SO ORDERED.**