In re Eugene ANTHONY and
Arleen Anthony, et al.

First Franklin Corporation, Plaintiff,

v.

Locke D. Barkley, Defendant.

Bankruptcy No. 00–13385.
Adversary No. 02–1105.

United States Bankruptcy Court,
N.D. Mississippi.

Dec. 8, 2005.

Michael Leo Hall, John R. Chiles, Burr & Forman, Birmingham, AL, for First Franklin Corporation.

Frank H. Coxwell, Coxwell & Associates, Jackson, MS, for Locke D. Barkley.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court is the motion for summary judgment filed by the plaintiff, First Franklin Corporation, (hereinafter "First Franklin"), concerning its requests for orders compelling arbitration; response thereto having been filed by the defendant Chapter 13 Trustee, Locke D. Barkley, (hereinafter "trustee"); and the court, having considered same, hereby finds as follows, to-wit:

### I.

The trustee filed applications in twenty-one bankruptcy cases on March 19, 2002, seeking this court's permission to employ attorneys to sue First Franklin on behalf of the respective Chapter 13 bankruptcy estates. As a pre-emptive defense, First Franklin filed the above captioned adversary proceedings against the trustee in all of the cases.

Each adversary complaint contained two counts. Count 2 requested an order enjoining the trustee from suing First Franklin based on certain adjudications that had previously been rendered by the court in the debtors' bankruptcy cases (the "prior adjudicatory defenses"). In the

event that First Franklin failed to succeed on its prior adjudicatory defenses theory, Count 1 requested an order compelling the trustee to enter into binding arbitration pursuant to arbitration agreements signed by the debtors in conjunction with loan transactions that they had entered into with First Franklin. In keeping with a consent agreement reached by the parties, an order was entered on December 5, 2002, to the effect that the prior adjudicatory defenses would be considered first. Thereafter, if necessary, the court would consider First Franklin's requests for arbitration.

On February 5, 2004, the court entered summary judgment in favor of First Franklin as to the prior adjudicatory defenses with respect to three of the twenty-one debtors. The court ruled against First Franklin as to the remaining eighteen debtors. The court's opinion and order, dated October 31, 2003, are incorporated herein by reference.

On February 17, 2004, the trustee, in conjunction with Harold Barkley, a Chapter 13 trustee for the Southern District of Mississippi, filed a complaint against First Franklin and certain agents, employees, representatives, and managers of First Franklin in the Circuit Court of Holmes County, Mississippi. The complaint asserted that First Franklin "packed" or forced placed credit life, credit disability, property and/or collateral insurance on the debtors' loan transactions; overcharged premiums for credit life, credit disability, and property insurance; and violated small loan regulatory law and state regulations. The lawsuit contained the following claims: breach of fiduciary duty; breach of the implied covenant of good faith and fair dealing; fraudulent misrepresentation and/or omission; negligent misrepresentation and/or omission; civil conspiracy; negligence; consumer fraud; and deceptive business practices.

On April 12, 2004, First Franklin removed the action to the United States District Court for the Southern District of Mississippi. The trustee and her co-plaintiff filed a motion to remand which is presently under consideration.

## II.

The issue now before this court is whether the trustee should be compelled to arbitrate the claims against First Franklin.

Each of the debtors obtained a loan or loans from First Franklin. As a part of the transaction, they signed an agreement entitled "Alternative Dispute Resolution Agreement," in which they agreed to arbitrate all claims or disputes that they may have with First Franklin, its agents, affiliates, and other related entities relating to the loan, as well as, the credit insurance purchased in connection with loan. The arbitration agreements are virtually the same. One of the agreement forms states, in pertinent part, as follows:

All disputes, controversies, or claims of any kind and nature between lender and borrower arising out of or in connection with the loan agreement or arising out of any transaction or relationship or lender and borrower or arising out of any prior or future dealings between lender and borrower, shall be submitted to arbitration and settled by arbitration in the State of Mississippi in accordance with the commercial arbitration rules of the American Arbitration Association (the "arbitration rules of the AAA"), and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

Another form states as follows:

The parties intend that this agreement shall encompass and embody the broadest range of matters that may be arbitrated under federal law. The parties further agree that any question as to the scope of this agreement shall, to the extent permitted by law, be determined by the arbitrator (including, without limitation, issues of fairness, capacity, waiver, unconscionability and so forth). The party seeking relief (the invoking party) has a duty to initiate the arbitration process as specified herein. The arbitration process any claim or counterclaim which it may have against the invoking party, whether deemed to be compulsory or permissive in law; and, the failure to bring such claim or counterclaim shall constitute a waiver of any bar to the bringing of such claim or counterclaim in any subsequent arbitration or legal action.

Yet another form states as follows:

Agreement to Arbitrate. You and we agree that any and all disputes, claims, or controversies of any kind in nature between us arising out of or relating to the relationship between us will be resolved through mandatory, binding arbitration. This agreement to arbitrate covers claims that (a) arise out of or relate to this agreement or the loan agreement; (b) arise out of or relate to any past transactions or dealings between us; (c) arise out of or relate to any future transactions or dealings between us; and (d) disputes about whether any claims, controversies, or disputes between us are subject to arbitration. Because you and we have agreed to arbitration, both of us are waiving our rights to have disputes resolved in court by a judge or jury.

This court conducted a hearing on December 27, 2004, to address this issue. The court found that discovery should be undertaken to "flesh out" the circumstances surrounding the loan closings. The court also concluded that if a debtor legally agreed to submit to binding arbitration, then that agreement would be binding on the trustee.

Having now completed discovery, the parties submitted their memoranda narrowing the scope of this issue.

The trustee contends as follows:

1) Bankruptcy trustees should not be bound by private arbitration agreements executed by individual debtors.

2) The underlying claims are core proceedings and, as such, the court has discretion to decide that arbitration is not in the best interest of the bankruptcy estates.

3) The arbitration agreements in question are one-sided, unconscionable, and thus unenforceable.

The trustee does not contend, and there is no evidence, that First Franklin engaged in any fraudulent misrepresentation in connection with the execution of the arbitration agreements.

### III.

The Federal Arbitration Act ("FAA") establishes that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir.2002). The purpose of the FAA is to give arbitration agreements the same force and effect as other contracts— no more and no less. 9 U.S.C. § 2; *Pennzoil Exploration and Production Co. v. Ramco Energy, Ltd.*, 139 F.3d 1061, 1064

(5th Cir.1998). As such, in determining whether the parties agreed to arbitrate a certain matter, courts apply the contract law of the particular state that governs the agreement. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

■ In deciding this matter, the Court has looked to the Fifth Circuit's decision in *Washington Mutual Finance Group, LLC v. Bailey,* 364 F.3d 260 (5th Cir.2004), which clarifies the Circuit's previous decision in *American Heritage Life Insurance Co. v. Lang,* 321 F.3d 533 (5th Cir.2003). "Courts conduct a bifurcated inquiry to determine whether parties should be compelled to arbitrate a dispute." *Bailey,* 364 F.3d at 263 (citing *Primerica Life Insurance Co. v. Brown,* 304 F.3d 469, 471 (5th Cir.2002)). "First, the court must determine whether the parties agreed to arbitrate the dispute. Once the court finds the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claim non-arbitrable." *Id.*

■ In *Green v. W.R.M. & Associates, Ltd.,* 174 F.Supp.2d 459 (N.D.Miss.2001), the district court discussed the extent of the inquiry that should be undertaken when addressing this issue, to-wit:

Courts conduct a two-step inquiry when deciding whether parties must submit to arbitration. *OPE Int'l,* 258 F.3d at 445 (citing *Webb v. Investacorp, Inc.,* 89 F.3d 252, 257–58 (5th Cir.1996)). The first step is to decide whether the parties agreed to arbitrate their dispute. *See Webb,* at 258. "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* To resolve these issues, "courts generally ... should apply ordinary state-law principles that govern the formation of contracts." *Id.* Once a court determines that the parties agreed to arbitrate, the court must assess " 'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.' " *Id.*

174 F.Supp.2d at 462.

The trustee does not contend that the arbitration agreements are unenforceable because of a contrary federal statute or policy. She acknowledges that there are written agreements to arbitrate and that the scope of those agreements includes the underlying claims that she has asserted against First Franklin. Both parties agree that Mississippi law applies to these proceedings.

■ Under Mississippi law, a contract can be unconscionable in one of two ways; procedurally and/or substantively. *Russell v. Performance Toyota, Inc.,* 826 So.2d 719, 725 (Miss.2002). The trustee primarily argues that the arbitration requirements are completely one-sided. Specifically, she asserts that under the agreement every claim that the debtors may assert against First Franklin must be submitted to binding arbitration. To the contrary, she points out that First Franklin has retained the right to utilize judicial remedies to foreclose upon the debtors' homes and to repossess their personal property.

■ "Procedural unconscionability" is proved by showing "a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties, and/or a lack of an opportunity to study the contract and inquire about the contract terms." *Russell,* 826 So.2d at 725. The trustee no longer appears to be pursuing this theory of unconscionability.

 "Substantive unconscionability may be found when the terms of the contract are of such an oppressive character as to be unconscionable." *Id.* "An arbitration agreement is not unenforceable *solely* because it is one sided." *First Family Financial Services, Inc. v. Fairley,* 173 F.Supp.2d 565, 572 (S.D.Miss.2001); *see also,* the following comments found in *Pridgen v. Green Tree Financial Servicing Corp.,* 88 F.Supp.2d 655, (S.D.Miss. 2000), where the arbitration agreement language was very similar to that in *First Family Financial Services, Inc. v. Fairley,* to-wit:

> However, Green Tree argues that such one-sidedness has been held to be an insufficient basis upon which to find the arbitration clause unconscionable, citing *Harris v. Green Tree Fin. Corp.,* 183 F.3d 173 (3rd Cir.1999) and *Green Tree Fin. Corp. of Ala. v. Vintson,* 753 So.2d 497 (Ala.1999). In *Harris,* addressing the very arbitration clause that is involved in the case *sub justice,* the United States Court of Appeals for the Third Circuit held that, under Pennsylvania law, mutuality of obligation was not required for the arbitration clause to be enforceable, as long as the underlying contract was supported by consideration. *Harris,* 183 F.3d at 179–81. That is, the fact that judicial remedies were not available to both parties did not make the clause unconscionable or unenforceable. The Third Circuit also noted that this holding comported with the majority opinion of other federal courts that had addressed the issue. *Id.* at 180 (citing *Doctor's Assoc., Inc. v. Distajo,* 66 F.3d 438 (2d Cir.1995); *Wilson Elec. Contractors, Inc. v. Minnotte Contracting Corp.,* 878 F.2d 167 (6th Cir.1989); *Dorsey v. H.C.P. Sales, Inc.,* 46 F.Supp.2d 804 (N.D.Ill.1999); *Randolph v. Green Tree Fin. Corp.,* 991 F.Supp. 1410 (M.D.Ala.1997)).

The United States Court of Appeals for the Fifth Circuit has not directly addressed this issue. However, Mississippi law is in accord with the law of Pennsylvania, upon which the Third Circuit based its decision in *Harris,* in that mutuality of obligation is not required for a contract to be enforceable. *Clinton Serv. Co. v. Thornton,* 233 Miss. 1, 100 So.2d 863, 866 (1958). Therefore, the arbitration clause is not unenforceable solely because it is one-sided. Moreover, even though the Court could still consider the one-sidedness as a factor in determining whether the clause was substantively unconscionable, Plaintiff's only assertion that the clause is substantively unconscionable is that it is one-sided. As stated above, however, the majority opinion seems to be that such one-sidedness is not, alone, sufficient to find the clause unconscionable. The Court finds persuasive the reasoning of the Third Circuit in *Harris,* as well as the cases cited therein.

88 F.Supp.2d 655 at 658–59.

The trustee relies upon the case of *Pitts v. Watkins,* 905 So.2d 553 (Miss.2005), for the proposition that the arbitration agreements are substantively unconscionable because they require the debtors to arbitrate all claims, but allow First Franklin the right to use judicial remedies to foreclose and repossess. In *Pitts,* the Mississippi Supreme Court did indeed hold that an arbitration agreement was unconscionable because of three reasons: (1) the agreement was one-sided because one party could go to court to seek damages while the other was limited to arbitration, (2) the agreement attempted to limit punitive damages, and (3) the agreement attempted to shorten the statute of limitations.

Shortly after the *Pitts* decision, the Mississippi Supreme Court again had an

opportunity to address compulsory arbitration in *Vicksburg Partners, LP v. Stephens,* 911 So.2d 507 (Miss.2005). In this decision, the Court offered the following comments, to-wit:

> Importantly, in *East Ford,* we discussed the legal effect of a "contract of adhesion" within the context of determining the issue of procedural unconscionability and applied logic similar to that espoused by the Fifth Circuit in *Hughes Training Inc. v. Cook,* 254 F.3d 588 (5th Cir.2001), one year earlier. In *Hughes Training,* the Fifth Circuit distinguished contracts of adhesion, arbitration clauses and procedural unconscionability:
>
>> Contracts in which one party has minimal bargaining power, also referred to as contracts of adhesion, *are not automatically void. See Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 961 F.2d 1148, 1154 (5th Cir.1992), *cert. denied,* 506 U.S. 1079, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993); *In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d 571, 574 (Tex.1999). "Instead, the party seeking to avoid the contract generally must show that it is unconscionable." *Id. "There is nothing per se unconscionable about arbitration agreements." EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 90 (Tex.1996)

911 So.2d 507 at 518–19.

> When reviewing a contract for substantive unconscionability, we look within the four corners of an agreement in order to discover any abuses relating to the specific terms which violate the expectations of, or cause gross disparity between, contracting parties. "Substantive unconscionability may be proven by showing the terms of the arbitration agreement [clause] to be oppressive." *East Ford,* 826 So.2d at 714 (citing *York,* 585 F.Supp. at 1278). Substantive unconscionability is present when there is

a one-sided agreement whereby one party is deprived of all the benefits of the agreement or left without a remedy for another party's nonperformance or breach. *Bank of Indiana v. Holyfield,* 476 F.Supp. 104, 110 (S.D.Miss.1979) (citing *United States Leasing Corp. v. Franklin Plaza Apartments, Inc.,* 65 Misc.2d 1082, 319 N.Y.S.2d 531 (1971)).

*Id.* at 521.

> We have considered our recent decision in *Pitts v. Watkins,* 905 So.2d 553 (Miss. 2005), and find that this case is clearly distinguishable. In *Pitts,* we were confronted with a contract which, inter alia, (1) allowed one party to the contract to go to court to recover damages, while the other party was limited to arbitration, (2) attempted to shorten the statute of limitations, and (3) limited the amount of damages one of the parties could otherwise recover as a matter of law. *Id.* at 558. The language in the arbitration clause in today's case pales in comparison to the oppressive language contained in the arbitration clause in *Pitts.*

*Id.* at 525.

Relying on the logic of *Vicksburg Partners, LP v. Stephens,* this court cannot say that the arbitration agreements in question are unconscionable solely because First Franklin retained the right to use the courts to foreclose its security interests in real property or to repossess personal property. *See, Fairley* and *Pridgen, supra.* Unlike the trustee's tort claims for predatory lending practices, these are statutory remedies that are utilized to effectuate the collection of secured obligations. As such, the court finds that the arbitration agreements are not substantively unconscionable; they are enforceable under Mississippi law.

## IV.

■ The trustee argues that a bankruptcy trustee should not be bound by the

private arbitration agreements executed by the Chapter 13 debtors. The causes of action that the trustee seeks to bring against First Franklin, however, are derived exclusively from contractual transactions that directly involved these debtors. Consequently, the trustee "stands in their shoes." Since this court has concluded that the arbitration agreements are enforceable, the trustee is bound to the terms expressed therein.

### V.

■ The Fifth Circuit held in the case of *In re Gandy*, 299 F.3d 489 (5th Cir. 2002), that "while it is generally accepted that a bankruptcy court has no discretion to refuse to compel the arbitration of matters not involving 'core' bankruptcy proceedings under 28 U.S.C. § 157(b), this court has held that a bankruptcy court may decline to stay a proceeding whose underlying nature derives exclusively from the provisions of the Bankruptcy Code." *Gandy*, 299 F.3d at 495.

The trustee contends that this court has determined that her claims against First Franklin are "core" proceedings, and that, therefore, this court has the discretion to refuse to compel arbitration. This argument is misplaced. This court in its initial ruling on First Franklin's motion for summary judgment did determine that the decision as to the applicability of the "prior adjudicatory defenses" was a core proceeding because provisions of the Bankruptcy Code were directly implicated. The court reserved ruling on First Franklin's requests to compel arbitration and specifically did not find that the allegations of predatory lending practices were "core" proceedings. Indeed, the court is of the opinion that the trustee's causes of action against First Franklin for predatory lending practices are not "core" proceedings since they do not depend on provisions in the Bankruptcy Code for their existence.

Rather, they are "non-core" or "related" proceedings that would not be in this court but for the filing of the bankruptcy cases. *See, Matter of Wood,* 825 F.2d 90, 97 (5th Cir.1987). As such, pursuant to the *Gandy* decision, this court does not have the discretion to refuse to compel arbitration since the arbitration agreements are enforceable according to their terms under state law. *See, Hays and Company v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149 (3rd Cir.1989).

An order, consistent with this opinion, will be entered contemporaneously herewith.