6-96-028-CV Long Trusts v. Dowd 



















In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-06-00059-CV
______________________________



IN RE: BROOKSHIRE BROTHERS, LTD.





                                                                                                                                                             

Original Mandamus Proceeding





                                                                                                                                                             
                          


Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter



O P I N I O N

            Brookshire Brothers, Ltd. (Brookshire) has petitioned this Court for a writ of mandamus. 
Brookshire sought to compel arbitration of a claim by one of its employees, Clara Mayfield, arising
from an injury she sustained while working at Brookshire's grocery store in Carthage. At the time
of the injury, Brookshire was a nonsubscriber to the Texas Workers' Compensation law. Mayfield
filed a suit alleging Brookshire's negligence proximately caused her injuries. The trial court denied
Brookshire's motion to stay litigation and compel arbitration; this request for mandamus relief
ensued. We deny the petition for writ of mandamus.
Mandamus Standard
            Certain principles are recognized for appellate courts to consider when deciding whether
mandamus should issue. With respect to matters involving the factual findings which are
discretionary by the trial court, the appellate courts should defer and should not substitute their own
judgment for that of the trial court. The movant must establish that the trial court could have come
to only one decision. Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992). On the other hand,
review of a trial court's determination of the legal principles controlling its ruling is much less
deferential. A trial court has no discretion in determining what the law is or applying the law to the
facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an
abuse of discretion and may result in appellate reversal by extraordinary writ. Id. 
            Arbitration of disputes is strongly favored. EZ Pawn Corp. v. Mancias, 934 S.W.2d 87, 90
(Tex. 1996); Prudential Sec., Inc. v. Marshall, 909 S.W.2d 896, 898 (Tex. 1995). In determining
whether the claims fall within the scope of an arbitration agreement, a court must focus on the factual
allegations of the complaint, rather than on the legal causes of action asserted. Marshall, 909
S.W.2d at 900. The burden is on the party opposing arbitration to show that their claims fall outside
the scope of the arbitration agreement. Id. Once an agreement to arbitrate has been shown to exist,
the party resisting arbitration bears the burden of proving that the matter in dispute is not within the
scope of the arbitration agreement. Id. Courts should not deny arbitration "unless it can be said with
positive assurance that an arbitration clause is not susceptible of an interpretation which would cover
the dispute at issue." Loy v. Harter, 128 S.W.3d 397, 402–03 (Tex. App.—Texarkana 2004, pet.
denied) (quoting Marshall, 909 S.W.2d at 899). That said, since arbitration agreements are founded
in contract law, a party has no obligation to submit the controversy to arbitration unless he or she has
contracted to do so. See Gateway Coal Co. v. United Mine Workers, 414 U.S. 368, 374 (1974).
            An employer may enforce an arbitration agreement entered into during an at-will employment
relationship if the employer establishes that the employee received notice of its arbitration policy and
accepted it. In re Halliburton Co., 80 S.W.3d 566, 568 (Tex. 2002) (orig. proceeding). Notice is
effective if it unequivocally communicates to the employee definite changes in the employment. 
Halliburton, 80 S.W.3d at 568 (citing Hathaway v. Gen. Mills, Inc., 711 S.W.2d 227, 229 (Tex.
1986)). If the employee receives notice and continues working with knowledge of the modified
employment terms, the employee accepts them as a matter of law. Halliburton, 80 S.W.3d at 568;
see also In re Dillard Dep't Stores, Inc., No. 04-1132, 2006 Tex. LEXIS 196 (Tex. Mar. 3, 2006)
(orig. proceeding).
The Instant Case
            Mayfield worked for Brookshire for twenty years. On July 21, 2004, she was working in the
company's grocery store in Carthage and slipped and suffered an injury. After numerous medical
consultations, Mayfield did not physically work for Brookshire after October 28, 2005, but she did
retain her status as an employee and continued to receive medical and disability benefits provided
by a Brookshire plan. More than a year after her injury, on or around August 29, 2005, Brookshire
enacted a policy requiring arbitration of disputes or claims by employees. Brookshire delivered the
policy to employees December 15, 2005, but the new policy was not sent to Mayfield until January
2006. 
            A.        Retroactive Application of the Arbitration Policy
            Does Brookshire's arbitration policy operate retroactively so that the cause of action accrued
by Mayfield more than a year earlier may only be heard in an arbitration process? Brookshire cites
two federal cases involving securities transactions in which the courts have interpreted contracts,
voluntarily entered by the parties, which contain broad arbitration agreements to require the disputes,
some of which arose before the arbitration provision, to be resolved by arbitration. Coenen v. R.W.
Pressprich & Co., 453 F.2d 1209 (2d Cir. 1972); R.M. Perez & Assoc., Inc. v. Welch, 960 F.2d 534,
539 (5th Cir. 1992). After reviewing the authorities on the issue of the retroactive application of
arbitration agreements, we find the answer is "much less clear."


 Here, the arbitration provision
stated: "The Policy will cover all disputes arising out of your relationship with [Brookshire],
including, but not limited to, the following: . . . Tort claims . . . ." We hold that the trial court did
not clearly err in denying the motion to compel arbitration. 
            First, the acts or omissions giving rise to Mayfield's cause of action occurred July 21, 2004,
a time when no arbitration policy was in effect. Brookshire did not institute the arbitration policy
until August 29, 2005, and did not notify Mayfield of the policy until January 2006. The policy
specifically designates its commencement—"Beginning August 29, 2005 (the "Effective Date")." 
Unlike this case, in both Dillard and Halliburton, the sequence of events was: (1) the arbitration
policy was enacted, (2) the employee continued to work for the employer, and (3) the employee was
injured or experienced the conduct on which the claim was based. 
            Second, the arbitration agreement does not specifically include prior claims. See Hendrick
v. Brown & Root, Inc., 50 F. Supp. 2d 527, 534 (D. Va. 1999).


 As opposed to many arbitration
agreements, this policy was drafted and adopted solely by one of the parties, Brookshire. In many
instances, an arbitration agreement is incorporated into a contract that both parties have entered as
a result of an arms-length transaction. Here, Mayfield and all other employees are deemed to have
accepted the terms of this policy by virtue of their continued employment with Brookshire. Since
Brookshire unilaterally established the terms of the arbitration agreement, the fact that the document
it prepared and presented to its employees does not specifically include a retroactive provision, even
if considered ambiguous, should be construed strictly against the drafter of the document. Gonzalez
v. Mission Am. Ins. Co., 795 S.W.2d 734, 737 (Tex. 1990) ("It is well-established law that where an
ambiguity exists in a contract, the contract language will be construed strictly against the party who
drafted it since the drafter is responsible for the language used.") (citing Republic Nat'l Bank v.
Northwest Nat'l Bank, 578 S.W.2d 109 (Tex. 1978)); see Hendrick, 50 F. Supp. 2d at 533.


 In
George Washington University v. Scott, 711 A.2d 1257 (D.C. 1998), the court held that changes in
a health plan including an arbitration provision did not apply to events occurring before the effective
date of the change. 
The arbitration clause was not the product of any negotiation . . . and it is clear the
Scotts did not affirmatively agree to give up their right to seek relief in court for
negligent acts committed before the effective date of the arbitration clause.  . . . 
[B]efore the arbitration clause could have any retroactive effect on rights previously
accrued, the language of the new provision in the contract should so state.  . . . No
ordinary reader of the 1994 and 1995 agreements would reasonably conclude that the
Scotts knowingly and affirmatively gave up their right to file a civil action for
negligent acts that occurred in 1994. 

Id. at 1261. That court further held that the presumption in favor of arbitration applies only to the
interpretation of the arbitration clause, not to the preliminary determination of the existence and
validity of an agreement to arbitrate. Id. The court found a valid arbitration provision, but only with
respect to events after the effective date of the arbitration policy, not for prior events. Id. 
            Third, the arbitration provision speaks prospectively only: "The policy will cover all disputes
arising out of your relationship with [Brookshire]." (Emphasis added.) Texas contract law requires
the court to determine the intent of the parties by interpreting the language of the contract in its plain
grammatical meaning, unless doing so would defeat the parties' intentions. See Ikon Office Solutions
v. Eifert, 2 S.W.3d 688, 694 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Thus, we look to the
dictionary definitions and common usage of these words to understand the meaning. 
            The root form of the word "arising"—the intransitive verb "arise"—means "[t]o come into
being." Webster's New College Dictionary 61 (2d ed. 2001). The verb "will" when used as an
auxiliary verb, indicates a future tense action to be performed by the main verb. Id. at 1263; see also
Garner's Modern American Usage 777 (2d ed. 2003). Thus, the verb phrase "will cover"
indicates future action, as distinguished from the phrase's present tense counterpart "covers." This
is true even if the subordinate verb clause employs a present tense verb—though that is not the case
here as the phrase "arising out" similarly suggests events that have not yet "come into being." See
generally Garner's Modern American Usage 778. The structure of the sentence does not suggest
that past events are subject to this arbitration provision. An employee can either accept the
arbitration agreement as it is written or reject it by ceasing employment with the company. (And in
this instance, giving up rights for medical and disability benefits.) The employee is deemed to have
accepted the arbitration provision, but she only accepts what the document states is arbitrable. Since
the structure of the provision indicates that this language was meant to apply only to future events,
it is proper to conclude with assurance that Brookshire and Mayfield did not intend to arbitrate
disputes occurring before the effective date of the arbitration policy. 
            To interpret the arbitration clause to apply retroactively would cause Mayfield to forego her
vested right to litigate an accrued claim. See Coffman v. Provost Umphrey, L.L.P., 161 F. Supp. 2d
720, 727 (E.D. Tex. 2001) (citing Security Watch, Inc. v. Sentinel Sys., 176 F.3d 369, 372–73 (6th
Cir. 1999) ("arbitration clause did not reach disputes arising under earlier agreements because it is
'nonsensical to suggest that (the plaintiff) would abandon its established right to litigate disputes
arising under the (prior) contracts'"); Choice Sec. Sys., Inc. v. AT&T Corp., No. 97-1774, 1998 U.S.
App. LEXIS 6594 (1st Cir. 1998) ("arbitration clause in 1994 contracts did not apply to pre-1994
contracts when the language of the arbitration clause did not indicate 'that the parties ever
contemplated so radical a retroactive renegotiation of their earlier agreements'"); Hendrick, 50
F. Supp. 2d at 535 ("arbitration clause was not retroactive when the text of the clause expressed no
language providing that it 'reached back in time to require an employee to arbitrate a claim which
had accrued before the contract was signed or the (arbitration clause) took effect'"); Connett v. Justis
Enters. of Kansas, Inc., No. 87-1739-T, 1989 U.S. Dist. LEXIS 3529, at *2 (D.C. Kan. Mar. 21,
1989) ("arbitration clause did not apply retroactively when it did not specify that it applied to past
conduct").
            Fourth, the designated representative of Brookshire, Robert Gilmer, originally testified it was
not Brookshire's policy that the arbitration provision applied to claims which occurred before
August 29, 2005 (the effective date of the arbitration provision). Gilmer's testimony is further
assurance that Brookshire, at the time the arbitration provision was adopted, did not consider causes
of action arising from preceding events to be a subject of arbitration. Later, Gilmer submitted an
affidavit in which he claimed the arbitration policy was only "intended to set a date on which
disputes which had already been filed in a court of law or with an administrative agency would not
be included within the arbitration agreement." 
             For all of the above reasons, we find this arbitration policy does not manifest an intention
to include this pre-existing dispute. An application of the rule, that parties are required to arbitrate
only those claims which they have agreed to arbitrate, leads us to the conclusion that the trial court
did not abuse its discretion in denying the motion for arbitration. See Hendrick, 50 F.Supp.2d at 538.
            B.        Procedural Unconscionability
            Mayfield further alleges that the arbitration policy, as applied to her circumstances, is
procedurally and substantively unconscionable. Brookshire asserts that we cannot consider this
argument since it was not raised at the trial court level, citing In re R&R Personnel Specialists of
Tyler, Inc., 146 S.W.3d 699, 703 (Tex. App.—Tyler 2004, no pet.), and other cases holding that an
order requiring arbitration must be upheld if it is proper on any basis considered by the trial court. 
While that is a correct statement of the law, we believe the rule governing this case is well
established: if the trial court does not specify the grounds for the ruling, it is presumed that it made
all necessary findings to support its judgment, and we must affirm the ruling if it can be upheld on
any legal theory that finds support in the evidence. Worford v. Stamper, 801 S.W.2d 108, 109 (Tex.
1990); Leisure Life Senior Apt. Hous., Ltd. v. JC Framing Co., No. 14-00-00426-CV, 2001 Tex.
App. LEXIS 5721 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (not designated for publication). 
            Mayfield's allegations as to procedural unconscionability are: (1) it is a unilateral policy
dictated by Brookshire, (2) Mayfield never specifically agreed to or accepted the policy, (3) as
applied to her, a rejection of the policy requires her to forfeit not only her job, but also her previously
accrued right to medical and disability benefits, and (4) she was in the process of invoking the
judicial system and except for the actions of Brookshire would have previously filed her lawsuit in
court. 
            The Texas Supreme Court has clearly stated that an employer of an at-will employee, having
the right to terminate employment at the employer's discretion, may condition continued employment
on the acceptance of an arbitration agreement. Halliburton, 80 S.W.3d at 572. Mayfield, however,
will not only give up her job, but also her right to continued medical and disability benefits that she
has been receiving, should she resign. Brookshire acknowledges that Mayfield must be an employee
of Brookshire to receive medical and disability benefits. We believe this is substantially different
than the Halliburton case. An employee might choose in some instances to forfeit a job, rather than
continue to work under the terms of an arbitration policy, particularly if the injury sustained is so
severe the employee could no longer perform the job duties, but it is substantially more oppressive
and unreasonable to require the employee to also forfeit accrued rights for medical and disability
benefits for an injury occurring months before the adoption of the policy. The cover letter for the
arbitration policy sent to employees stated, "no rights are taken away from anyone and the same
remedies, like money damages, are still available through this process." The statement is misleading
when it informs employees that no rights are taken away. This litigation is proof that, in the event
arbitration is required, the right to a judicial resolution or a jury trial no longer exists under the
arbitration policy. In Wilcox v. Valero Refining Co., 256 F. Supp. 2d 687 (S.D. Tex. 2003), the court
held that an arbitration policy would be procedurally unconscionable, even when stated in the
broadest terms ("any workplace dispute, regardless of when it arises"), if it encompassed events that
occurred in the past and was enacted after the employee had invoked the "machinery of the justice
system." Id. at 691. The court found this would amount to a change in the rules in the middle of the
game. There, the employee had not filed suit, but had filed an administrative claim that was a
prerequisite to a lawsuit. Since the employee had instituted the judicial process by filing an
administrative matter, the court found it would be procedurally unconscionable to allow the new
arbitration policy to govern the facts of an incident occurring before the establishment of the
arbitration policy. Here, Mayfield had not filed suit when she received a copy of Brookshire's policy. 
However, the facts also show that she had retained a lawyer, had been conferring with officials at
Brookshire, and the parties had scheduled mediation for February 1, 2006. According to Brookshire,
about the same time Mayfield was notified of the arbitration policy, January 2006, Brookshire
cancelled the mediation setting due to Mayfield's "outlandished demand for compensation." We
believe this is similar to Wilcox in that Mayfield had taken action to institute the legal process and
had notified Brookshire of her intention to pursue legal action on the dispute before receiving the
arbitration policy. Since it is the policy of our state to encourage alternative dispute resolutions, an
employee should not be penalized for attempting to resolve a matter by a sanctioned alternative to
litigation. After examining the entire atmosphere in which the policy was made; the alternatives, if
any, available to the parties at the time the policy was instituted; the "nonbargaining ability" of one
party; whether the policy was illegal or against public policy; and whether it is oppressive or
unreasonable, we find the arbitration policy, as applied to Mayfield's situation, was procedurally
unconscionable. See In re Turner Bros. Trucking Co., 8 S.W.3d 370, 376–77 (Tex.
App.—Texarkana 1999, orig. proceeding); Pony Express Courier Corp. v. Morris, 921 S.W.2d 817,
821–22 (Tex. App.—San Antonio 1996, no writ). 
            For the reasons stated above, we hold that the arbitration provision did not require mandatory
arbitration for Mayfield's claims. Therefore, the trial court did not abuse its discretion when it denied
Brookshire's motion to compel arbitration. 
            We deny the petition for writ of mandamus. 
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          July 17, 2006
Date Decided:             July 18, 2006